*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0275P (6th Cir.)
File Name: 03a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CLARENCE SEAY, JR.,
    *Plaintiff-Appellant,*

*v.*
              No. 01-5953

TENNESSEE VALLEY
AUTHORITY; CRAVEN
CROWELL,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 00-00168—R. Allan Edgar, Chief District Judge.

Argued: December 6, 2002

Decided and Filed: August 6, 2003

Before: COLE and CLAY, Circuit Judges;
BERTELSMAN, Senior District Judge.*

───────────────

* The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

2   *Seay v. Tennessee Valley Authority et al.*  No. 01-5953

───────────────

## COUNSEL

**ARGUED:** John R. Benn, Sheffield, Alabama, for Appellant. Barbara S. Maxwell, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellees. **ON BRIEF:** John R. Benn, Sheffield, Alabama, for Appellant. Barbara S. Maxwell, Thomas F. Fine, John E. Slater, Dillis D. Freeman, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellees.

───────────────

## OPINION

───────────────

CLAY, Circuit Judge. Plaintiff Clarence Seay, Jr. appeals from the district court's grant of summary judgment, on all counts of Plaintiff's amended complaint, in favor of Defendants Tennessee Valley Authority and Craven Crowell (collectively "TVA"). The lawsuit concerned certain adverse actions TVA took against Plaintiff which Plaintiff alleged constituted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* and various other statutes and policies. Plaintiff contends that genuine issues of material fact remain for this case to proceed to trial, and that the district court erred in denying Plaintiff's request to strike evidentiary submissions from TVA's reply briefs. As discussed below, we **AFFIRM** in part and **REVERSE** in part the district court's judgment.

I

### A. Procedural Background

On November 17, 1999, Plaintiff filed a 131-count complaint with the United States District Court for the Northern District of Alabama, which alleged, in pertinent part, the following: (1) wrongful non-selection relating to

forty-three posted vacant positions due to race discrimination and retaliation, in violation of Title VII; (2) violation of TVA's hiring and retention policy for disabled veterans; (3) violation of Supplementary Agreement 10 of TVA's collective bargaining agreement; (4) violation of Plaintiff's procedural and substantive reduction-in-force ("RIF") rights; (5) wrongful adverse action (suspension); and (6) racially discriminatory suspension. The district court for the Northern District of Alabama dismissed with prejudice forty-eight counts of Plaintiff's complaint and transferred the case to the Eastern District of Tennessee. Subsequent to the transfer, Plaintiff filed an amended complaint.

TVA filed four motions for partial summary judgment, which collectively sought to dismiss with prejudice all remaining counts in Plaintiff's amended complaint. The first motion sought to dismiss fifty-nine counts, and Plaintiff filed responsive papers in opposition on March 15, 2001. TVA then filed a reply brief on March 26, 2001. TVA attached to the reply brief some additional evidentiary submissions. Three days later, on March 29, 2001, the district court issued an order granting summary judgment to TVA on all fifty-nine counts. The following day Plaintiff filed a motion to strike the evidentiary submissions attached to TVA's reply brief, which the district court denied.

On March 26, TVA filed its second motion for partial summary judgment; Plaintiff filed papers in opposition on April 20, 2001, and TVA filed a reply brief on April 25, 2001. Plaintiff did not challenge any submissions in connection with this sequence.

On March 30, 2001 TVA filed its third motion for partial summary judgment. Plaintiff filed his response on April 26, 2001, and on May 2, 2001 TVA filed a reply brief, which included new declarations. Attached to the declarations were exhibits containing evidentiary material that had not previously been submitted by TVA, although the evidentiary material had been submitted by Plaintiff. Plaintiff moved to

strike the evidentiary submissions, and the district court denied this request.

On April 2, 2001, TVA filed its fourth motion for partial summary judgment. Plaintiff filed papers in opposition on April 26, 2001. On May 4, 2001, TVA submitted an amended fourth motion, which argued, in part, that the district court lacked subject matter jurisdiction over counts 126, 127, 130, and 131 of Plaintiff's amended complaint. Plaintiff filed a motion to strike TVA's amended motion, arguing that it was not timely. The district court denied this motion.

On May 29, 2001, the district court granted summary judgment in favor of TVA on all of the remaining counts in Plaintiff's amended complaint. Plaintiff then filed a motion for reconsideration or clarification, which the district court also denied. This timely appeal followed.

## B.   Substantive History

Plaintiff, an African American male, was employed with TVA from April of 1977 to September 26, 1997. At the time of his termination, he was a Safety Specialist in TVA's Labor and Safety organization. He had a grade level of SD-4 and was a 60% disabled veteran. The gravamen of Plaintiff's amended complaint concerns three events during his employment with TVA: his sixty-day suspension, his termination pursuant to a RIF, and his non-selection for forty-three vacant positions to which he applied after he was given notice of his RIF.

### 1.   Sixty-Day Suspension

On February 10 and 11, 1997, Plaintiff was assigned to perform a safety inspection at TVA's Raccoon Mountain Pumped Storage Plant ("Raccoon Mountain"). Although the work would not begin until Monday, February 10, 1997, because of the traveling distance and pursuant to custom at TVA, Plaintiff checked out a TVA vehicle on Friday,

February 7, 1997, and drove it to his residence in Chattanooga, Tennessee. On Monday, February 10, Plaintiff drove the vehicle to Raccoon Mountain, and after finishing work he drove the vehicle to Miles Law School in Birmingham, Alabama, some 139 miles away, where he was attending night classes. He repeated this process on the following day, February 11, 1997. Plaintiff admitted to having used the vehicle for unofficial and personal purposes of attending the law school classes on those two nights. He also acknowledged that he had not received permission to use the vehicle for this purpose. The two trips resulted in about 500 additional miles of usage for the TVA vehicle. Plaintiff's conduct was discovered, and the matter was referred to the Office of the Inspector General (OIG) for an investigation. After OIG completed its investigation into the matter, Plaintiff's supervisor James Johnson issued a Notice of Proposal recommending that Plaintiff receive a sixty-day suspension because he misused the TVA vehicle "on two separate occasions." (J.A. at 493.) Subsequently, Johnson's supervisor, Eugene Walters, issued a Notice of Decision, informing Plaintiff of his sixty-day suspension for twice misusing a TVA vehicle. After receiving the notice, Plaintiff contacted one of TVA's Equal Opportunity (EO) counselors. He then filed a formal administrative charge, or Equal Employment Opportunity (EEO) complaint, with TVA's Equal Opportunity Compliance (EOC) staff, alleging that his suspension was due to racial discrimination and retaliation for prior EOC activity.

### 2. Plaintiff's RIF and Non-selections

In February of 1997, TVA obtained an outside consultant, Scott Madden, to conduct a workforce competitiveness study of several of TVA's organizations. Pursuant to Madden's recommendations, TVA decided to undertake a reorganization of four departments, resulting in numerous RIFs throughout those departments. As part of the reorganization, all of the Safety Specialist positions were eliminated. Plaintiff was

notified on July 25, 1997 that he would be terminated pursuant to the RIF effective September 26, 1997.

After learning of his impending RIF termination, Plaintiff contacted an EO counselor and alleged that he was being terminated due to race discrimination and retaliation for prior EOC activity. Plaintiff also applied for approximately forty-three vacant job postings at TVA, but he was not selected for any of the positions. Plaintiff filed an EEO complaint with TVA's EOC staff for each of these non-selections.

On September 26, 1997, Plaintiff was terminated from TVA pursuant to the RIF. Although he was the highest-listed employee for retention purposes (i.e., he would be the last terminated within his group), he was still terminated because the entire department was eliminated in the reorganization.

Plaintiff filed another EEO complaint on November 22, 1997 with TVA's EOC staff. This complaint alleged that he was being terminated due to race discrimination. It also challenged whether the termination took into consideration his rights as a disabled veteran and whether the termination was conducted in accordance with TVA's collective bargaining agreement. Because the complaint involved discrimination claims as well as nondiscrimination claims, the EOC staff accepted Plaintiff's complaint as a "mixed case" complaint, pursuant to 5 U.S.C. § 7702 and 29 C.F.R. § 1614.302.[1] Before the EOC director issued a final decision, but more than 120 days after the EOC staff received the complaint, Plaintiff filed the instant civil action.

### II

We review a district court's grant of summary judgment de novo. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000) (*en banc*). Summary judgment is only appropriate where "the

---

[1]For a definition of "mixed case" complaint, *see* Part IV.A, *infra*.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56. The mere existence of some alleged factual dispute in the case will not defeat an otherwise properly supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

### III

On appeal, Plaintiff challenges the district court's dismissal of his claims involving non-selections for the positions of (1) Contract Manager, (2) Project Manager, Safety, and (3) Methods Team Specialist (Plant Operations). The district court dismissed these claims, finding that Plaintiff failed to establish a prima facie case of racial discrimination regarding any of the non-selections.

To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case, which creates an inference of discrimination based on circumstantial evidence. *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1248 (6th Cir. 1995) (citations omitted). A prima facie case requires a plaintiff to show (1) that he is a member of a protected class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job. *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1166 (6th Cir. 1996); *see also Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-54 & n.6 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Burdine,* 450 U.S. at 253 (citing *McDonnell Douglas,* 411 U.S. at 802). If the defendant satisfies that burden, then the burden of

production shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for discrimination. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 434 (6th Cir. 2002) (quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000) (internal citation and quotation marks omitted)).

### A.   Count 15:   The Contract Manager Position

On appeal, there is no dispute that Plaintiff was a member of a protected class (African American), that he applied for the Contract Manager position, that he did not get an interview or an offer, and that the job went to a white person instead. However, the district court found that Plaintiff had failed to establish that he was qualified for the position. The job posting set forth the following minimum requirements for the Contract Manager position:

> Ability to provide leadership, to coach people toward accomplishment of group objectives. To manage change occurring in a rapidly changing environment. Work independently with minimal or no supervision. Extensive background in areas of supply chain mgt & skills in negotiation. Oral & written communication. Process improvement & financial analysis. B.S. degree in business administration, or related field, or equivalent experience in an industrial environment, including managerial experience. Knowledge of supply chain principles & practices, TVA business policies, laws, regulations, executive orders, & fed guidelines governing TVA's contracting.

(J.A. at 1388.) The main point of contention between the parties is the requirement of "[e]xtensive background in areas of supply chain [management and] skills in negotiation, oral

[and] written communication." TVA also notes that John Opp, the selecting manager for this position, submitted a sworn statement that his "interviews were directed to those people with the most procurement-related experience that had been a purchasing agent or contract manager with relevant prior experience." (J.A. at 250). TVA argues that Plaintiff's application and resume did not demonstrate any experience in procurement or supply chain management. TVA also argues that Plaintiff's own deposition testimony, in which he stated that he had never been a purchasing agent or contract manager while employed at TVA and had never worked under Opp's supervision, refutes his present contention that he met the criteria. Plaintiff contests this by pointing to his application, which included a statement from his immediate supervisor about his then-current job responsibilities:

> Coordinated the daily order and distribution processing, tracking, and security of the audiovisual library. Planned, coordinated, and *implemented procurement of new audiovisuals with the year budget.* Upgraded the technical quality of audiovisuals to state-of-the-art through procurement practices or replacement agreements with production companies.

(J.A. at 1395 (emphasis added).) Although this statement supports some background in procurement activities, Plaintiff has not come forward with any evidence that he has had any supply chain management experience. The closest possibility on his resume was his job as a Material Control Storekeeper in the Army from 1969 to 1970. Plaintiff described his work in this position as "Responsible for inventory for all stores on plant site." (J.A. at 1393.) This description is vague and makes no mention of negotiation. Although Plaintiff's deposition testimony shed more light on what "[r]esponsible for inventory" meant, Opp had only the descriptions on Plaintiff's application and resume at his disposal, and it was not Opp's responsibility to discern all of Plaintiff's work experience from the brief descriptions on his application and resume.

Moreover, the record demonstrates that the successful candidate, Roy Jones, possessed the requisite work experience through his position as a purchasing agent at TVA and met the other minimum criteria. Therefore, we are not persuaded that Plaintiff established his prima facie case for his non-selection claim regarding the Contract Manager position.

### B.   Count 75:   The Project Manager, Safety Position

Next, Plaintiff challenges the dismissal of his non-selection claim for a Project Manager, Safety Position in the Training and Safety department. The district court, in granting summary judgment to TVA on this claim, determined that Plaintiff failed to establish a prima facie case of discrimination with respect to this claim because he was not qualified for the position for which he applied. The minimum qualifications listed in the job posting were:

> Bachelors degree in industrial safety or equivalent experience and six (6) years of comprehensive loss control experience in power plant operations and maintenance safety/security process integration. Strong communication and analytical skills. Must have successfully demonstrated the defined competencies of relationship building, service attitude, flexibility/adaptability, initiative/independence, creativity/innovation, customer focus continuous improvement, technical knowledge, leadership, and organization and planning.

(J.A. at 1413.) Plaintiff applied for the position but was neither selected nor granted an interview. Kenneth S. McVay, Industrial Safety Manager of Programs for the Fossil Power Group, testified at his deposition that because he received over forty applications for the Project Manager, Safety position, he decided to interview only those applicants with supervisory or managerial experience, which Plaintiff apparently lacked. McVay also testified that Plaintiff lacked

the necessary six years of loss-control experience in a power plant.

At issue on appeal are the third and fourth prongs of the prima facie test, as well as TVA's asserted legitimate explanation for not selecting Plaintiff. Specifically, the parties dispute the following: (1) whether Plaintiff possessed the minimum qualifications (specifically, six years of loss control experience in power plant operations); (2) whether the selectees possessed the minimum qualifications; (3) whether Plaintiff and the selectees were "similarly-situated," and (4) whether TVA's decision to interview only those applicants with management experience constituted a legitimate nondiscriminatory reason for Plaintiff's non-selection.

As to the third prong (i.e., Plaintiff's qualifications), McVay's testimony appears to have conceded that Plaintiff had "six years of various levels of safety experience." (J.A. at 1303.) However, the posted criteria for the position required the loss control experience to be obtained in power plant operations. A review of Plaintiff's resume and application does not reveal any references to "power plant" or any sort of plant. Therefore, Plaintiff has not established that he was qualified for the job based on TVA's posted qualifications.

This does not end the inquiry, however, because although posted minimum requirements often dictate which applicants are qualified and which are not, this does not always hold true. As the Supreme Court has repeatedly emphasized, "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978)). Thus, where a selectee does not appear to meet the posted qualifications, a genuine issue of material fact may exist as to whether the posted minimum requirements actually dictated the criteria the

employer used in selecting applicants for the posted job. *See Wilburn v. Dial Corp.,* 724 F. Supp. 521, 528-29 (W.D. Tenn. 1989) (denying summary judgment where a black female plaintiff was refused a promotion because she lacked the requisite managerial experience, but the white male who received the promotion lacked the educational requirement); 1 Lex K. Larson, Employment Discrimination § 8.02[3], at 8-29 (2d ed. 2003) ("A court may be inclined not to take the employer's stated qualifications seriously when in fact the employer does not consistently adhere to those stated qualifications when making employment decisions."). When neither the plaintiff nor the selectee meets all the stated criteria, the qualified prong is satisfied for summary judgment purposes, because a genuine issue of material fact arises as to whether the posted standards actually dictated whether Plaintiff was qualified.[2]

Here, Plaintiff points to two of the five selectees, Henry Ziegler and Charles Proffitt, and argues that they did not meet the posted qualifications for the position either. Plaintiff observes that Ziegler did not possess a bachelor's degree in industrial safety, which is listed among the posted minimum requirements, whereas Plaintiff did possess such a degree. Ziegler instead possessed a bachelor's degree in industrial engineering. Plaintiff also notes that Proffitt possessed no college degree at all, but only a high school education. He further argues that Proffitt lacked the six years of health and safety experience because he was only an electrician. TVA counters that Ziegler's industrial engineering degree constituted an equivalent degree, and that although Proffitt did not have a college degree and was a trained electrician, he possessed equivalent experience because, in addition to his

---

[2]Of course, an employment discrimination plaintiff does not automatically survive summary judgment whenever the better-treated employee fails to possess all stated qualifications. For instance, if neither candidate meets all stated criteria, but it is apparent from the record that the selectee is obviously better qualified than the plaintiff, then summary judgment would be appropriate.

electrician position, he was a Health and Safety Manager at TVA's Gallatin Steam Plant for the twelve years just prior to his selection, i.e., from 1985 to 1997.

We are not persuaded by TVA's arguments. Based on the minimum qualifications posted in the job announcement, Ziegler was required either to hold a bachelor's degree in industrial safety or to possess equivalent *experience.* TVA argues that Ziegler possessed an equivalent *degree,* but that is not what TVA's posted minimum qualifications stated. Even if the language of the posting could (or should) be interpreted in such a manner, it is unclear on this record that a degree in industrial engineering is equivalent to a degree in industrial safety. This seems to be particularly critical here, where the position is for a manager in *safety,* not *engineering.*

Moreover, it is unclear from the record that Proffitt possessed twelve years of health and safety experience. All of the early experience listed on his resume relates to electrician work. The first mention of health and safety is on page two of the resume, under "September 1985-Present," where it states that Proffitt maintained dual roles as a maintenance electrician and acting manager of health and safety. However, under this entry the resume lists no health and safety-related experience. Instead it lists the following: "Maintained all plant electrical equipment"; "Maintained 161KV switchyard & transformer yard"; and "Maintained all yard operations electrical equipment." (J.A. at 1021.) Page four of the resume states, among other things, "Experience: Health and Safety Manager," and lists some accompanying responsibilities. (J.A. at 1023.) However, this listing includes no dates to indicate at what point Proffitt served as a health and safety manager. And while the resume lists a number of teams, it does not indicate how long Proffitt served on any of those teams for purposes of determining whether he had six years of health and safety experience.

McVay's deposition testimony has further confused the issue. When asked to point on the resume to where Proffitt

had any loss control experience prior to 1992, McVay replied, "I can't do that." (J.A. at 1323.) After 1992, Plaintiff points out, and TVA does not disagree, that Proffitt was officially employed as a Maintenance Electrician. McVay's testimony creates two problems. First, it tends to contradict TVA's representation that Proffitt possessed twelve (or even six) years of health and safety experience prior to receiving the Project Manager, Safety position in 1997. Second, if Proffitt did not begin to acquire health and safety experience until 1992, then it would have been impossible for him to have completed six years of loss control experience by the time he received the position in 1997.

The record does not support TVA's contention that Proffitt and Ziegler met the minimum qualifications for the Project Manager, Safety position as advertised in the job posting. Thus, a genuine issue of material fact remains as to whether those posted qualifications served as the actual guidelines by which applicants' qualifications were determined. Therefore, Plaintiff has satisfied the third prong of his prima facie case, for purposes of summary judgment.

As to the fourth prong, it is not apparent from the record that selectees Proffitt and Ziegler were better qualified than Plaintiff for the Project Manager, Safety position. The record does not support TVA's representations that these two selectees possessed the requisite degree or the equivalent experience, or that Proffitt possessed six years of loss control experience, the lack of which supposedly doomed Plaintiff's application. In other words, Proffitt and Ziegler were similarly-situated to Plaintiff in that they possessed qualifications that, based on the record, appear to be equal to or less than Plaintiff's qualifications. Therefore, we find that Plaintiff has satisfied the fourth prong of his prima facie case.

Because Plaintiff has met his prima facie burden for purposes of summary judgment, we now consider TVA's argument that it possessed a legitimate nondiscriminatory reason for not hiring Plaintiff. Specifically, TVA argues that

McVay's decision to reduce the applicant pool by considering only the applicants with management experience (a qualification not listed among the stated criteria in the job posting) constituted a legitimate nondiscriminatory reason for Plaintiff's non-selection. However, we are not persuaded. As discussed earlier, when an employer presents a legitimate nondiscriminatory reason for an adverse employment action, the employee must demonstrate that a genuine issue of material fact exists as to whether the asserted reason is a pretext for discrimination. *Burdine,* 450 U.S. at 253.

In the instant case, TVA's proffered legitimate explanation is insufficient to explain Plaintiff's non-selection. *Hopson,* 306 F.3d at 434. If McVay had been seeking a way to reduce his applicant pool, it appears that the obvious first step would have been to eliminate those applicants who did not meet the *stated* qualifications before using *unstated* qualifications to further eliminate applicants. Yet, selectees Ziegler and Proffitt remained in the applicant pool, despite the fact that neither met the stated criteria and despite McVay's ostensible need to reduce his large applicant pool. This inconsistency tends to undermine TVA's legitimate nondiscriminatory explanation and raises "an inference [of pretext] that must be drawn, at summary judgment, in favor of the nonmovant." *Wexler v. White's Furniture, Inc.,* 317 F.3d 564, 577-78 (6th Cir. 2003) (*en banc*). Therefore, we reverse the district court's grant of summary judgment in favor of TVA on Count 75 and remand the claim for a trial.

**C. Count 67: The Methods Team Specialist (Plant Operations) Position**

Next, Plaintiff challenges the dismissal of his claim concerning his non-selection for the Methods Team Specialist (Plant Operations) position. In dismissing the claim, the district court concluded that the claim was time-barred and that equitable tolling did not apply. Plaintiff acknowledges on appeal that he filed suit late on this claim, but he contends that he was entitled to maintain the suit based on equitable

tolling principles. We agree with Plaintiff and therefore reverse the district court's dismissal of this claim.

The facts demonstrate that on November 22, 1997 Plaintiff filed an EEO complaint regarding his non-selection for this position. On December 9, 1997, TVA's EOC organization issued a final agency decision (FAD), dismissing Plaintiff's EEO complaint on the grounds that the Methods Team Specialist position had not been filled. Plaintiff received the FAD, which was sent via certified mail, on December 19, 1997, but he did not file a claim regarding this non-selection in federal court until November 17, 1999.

In the course of preparing a pre-complaint counseling report ("PCCR"), Lynn Talley, Manager of Counseling and Analysis in TVA's EOC organization, asked TVA's human resources department about the status of the job vacancy. The human resources department responded by letter dated December 5, 1997, stating the following:

> Management made a decision not to fill the PG-8 position but to utilize the headcount and budget to further develop a current employee in preparation for a site position. Mr. Albert J. Salatka was rotated into this position at the PG-5 level for the purpose of development. Once this developmental process is complete, Mr. Salatka will no longer occupy the headcount in the Process Methods organization. Management will then make a decision as to whether or not to fill the PG-8 position.

> As indicated above, the position . . . has not been filled; therefore, no selection has been made. If the position is to be filled in the future, it will be re-posted and the selection process completed.

(J.A. at 737.) The FAD indicated that "no one was selected for this position," that applications . . . were never reviewed nor any qualifications of candidates ever compared," and that

Plaintiff's allegation of discrimination was therefore "premature." (J.A. at 201.) Although the FAD mentioned the December 5, 1997 letter from TVA's human resources department, it did not mention the letter's explanation to the effect that Salatka had been rotated into the position for "developmental" purposes.

Plaintiff argues that he was entitled to equitable tolling because TVA purposely withheld the critical information that Salatka, a white man, had been "given" the job, and that had Plaintiff known this information he would have filed a lawsuit with regard to that non-selection in a timely fashion. TVA insists that it did not mislead Plaintiff because the job position had not been filled, and that the decision to rotate Salatka into the position was in the December 5, 1997 letter, of which the FAD made Plaintiff aware. Thus, TVA argues, Plaintiff failed to discover that Salatka was carrying out the duties of the position because of his own lack of due diligence. The district court agreed with TVA's interpretation of the facts and declined to apply equitable tolling.

A Title VII plaintiff ordinarily must file a civil action within ninety days of receiving a notice of dismissal and right to sue from the Equal Employment Opportunity Commission (EEOC). *See* 42 U.S.C. § 2000e-5(f)(1). However, because this requirement is not jurisdictional, a court may apply equitable tolling, which "'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *EEOC v. Ky. State Police Dep't,* 80 F.3d 1086, 1095 (6th Cir. 1996) (quoting *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir. 1990)). We review a district court's decision to grant or deny equitable tolling de novo when the facts are undisputed or the district court rules, as a matter of law, that equitable tolling is not available; in all other circumstances we review for an abuse of discretion. *Amini v. Oberlin Coll.,* 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Dunlap v. United States,* 250 F.3d 1001, 1007 n.2 (6th Cir. 2001)).

Because the parties dispute some of the facts, we review the district court's denial for an abuse of discretion. *Id.* We consider five factors in determining whether equitable tolling should be allowed: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir. 1998) (citing *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988)). Regarding the third factor, a plaintiff must demonstrate facts showing his or her diligence in pursuing the claim. *See Morgan v. Washington Mfg. Co.,* 660 F.2d 710, 712 (6th Cir. 1981). However, these factors are not exclusive bases upon which to apply equitable tolling; thus, the decision to equitably toll the limitations period is made on a case-by-base basis. *Truitt,* 148 F.3d at 648. A district court need not find that the employer willfully engaged in wrongful conduct to allow equitable tolling. *See Andrews,* 851 F.2d at 151. Nevertheless, the doctrine of equitable tolling is restricted and to be carefully applied. *Id.* (citations omitted).

We find that the district court did abuse its discretion in declining to extend equitable tolling to Plaintiff. In this case, the FAD informed Plaintiff that no one received the job and no applications were reviewed, but it omitted the additional information that Salatka was performing the job duties for "developmental" purposes. This was the critical information Plaintiff needed to raise his suspicions about TVA's possible racially discriminatory motive in rejecting him. Although the FAD referenced the December 5, 1997 letter that mentioned Salatka's selection, the reality remains that the explanation in the FAD was misleading. It implied that nobody took on the job responsibilities, when in fact TVA placed Salatka in the position, albeit at his current PG-5, rather than PG-8, level. Plaintiff, in reliance, did not pursue his EEO complaint for this non-selection. Because the explanation in the FAD misrepresented the circumstances surrounding the non-selection, Plaintiff did not need to request a copy of the

December 5, 1997 letter to be reasonably diligent. We therefore hold that equitable tolling should have been granted and that the district court abused its discretion in holding otherwise. Because neither of the parties discuss the underlying merits of this non-selection claim on appeal, we remand Count 67 to the district court for further consideration of the claim's merits.

## IV

Plaintiff also challenges his RIF, asserting various theories under which the RIF was wrongful. We address each of his claims in connection with the RIF below.

### A.  Exhaustion of Administrative Remedies

Before addressing the merits of these claims, however, we turn our attention to the district court's dismissal of Counts 126, 127, and 131 on procedural grounds. In so dismissing, the district court stated that Plaintiff had failed to exhaust his administrative remedies. On appeal, Plaintiff argues that he did comply with the administrative provisions for "mixed case" complaints by waiting the requisite period of time after filing an EEO complaint before initiating a civil action in the district court.

We agree with Plaintiff. A "mixed case" complaint "is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1). A "mixed case" complaint may be filed with the employer-agency's EEO process (pursuant to 29 C.F.R. § 1614.302) or with the MSPB (pursuant to 5 C.F.R. § 1201.151), but not with both. *Id*. § 1614.302(b). If the "mixed case" complaint is filed with the federal agent's EEO process and a FAD is not issued within 120 days of the date of filing, "the complainant may appeal the matter to the MSPB at any time thereafter as specified at 5 C.F.R.

1201.154(b)(2) or may file a civil action as specified at § 1614.310(g), but not both." *Id*. § 1614.302(d)(1)(i); *see also* 5 U.S.C. § 7702(a)(2) (noting that an agency decision on a "mixed case" complaint "shall be a judicially reviewable action unless the employee appeals the matter to the [MSPB]"). It is not disputed that Plaintiff had a "mixed case," that he filed a "mixed case" complaint through TVA's EEO process, that a FAD was not issued within 120 days, and that Plaintiff thereafter filed a civil action in the district court.

TVA argues on appeal that after TVA failed to issue the FAD within 120 days, Plaintiff was required to appeal the action to the MSPB and develop an administrative record for the district court to review. TVA's argument is two-fold. First, it notes that Plaintiff, subsequent to filing his civil action, abandoned his claims of discrimination regarding the RIF. TVA argues that once Plaintiff abandoned the discrimination claims, his "mixed case" complaint ceased and the district court lost jurisdiction over the nondiscrimination claims. For this argument TVA relies on the following text from *Noble v. Tennessee Valley Authority,* 892 F.2d 1013 (Fed. Cir. 1989) (*en banc*):

> In this court, Noble has abandoned his discrimination claims, instead basing his petition solely on the failure of the MSPB to require the TVA to honor his reemployment rights under the [Veterans Preference Act]. Accordingly, this is no longer a "mixed" case and jurisdiction over this matter lies, if at all, in this court.

*Id.* at 1014. TVA asserts that Plaintiff instead should have brought his nondiscrimination claims regarding his RIF to the MSPB and then sought judicial review, if necessary, with the Federal Circuit, where exclusive jurisdiction ostensibly lies in this situation.

TVA is mistaken. *Noble* does not stand for the proposition that jurisdiction lies only in the Federal Circuit when a "mixed case" complaint already brought into a federal district

court later abandons its discrimination component. Rather, the quoted excerpt from *Noble* was referring to the fact that the Federal Circuit lacks jurisdiction to consider "mixed case" complaints. *See id.* at 1014; *see also Williams v. Dep't of Army,* 715 F.2d 1485, 1487 (Fed. Cir. 1983) (*en banc*). Thus, the *Noble* court was essentially insuring that it had jurisdiction over the appeal before it. And while it is true that the Federal Circuit has exclusive jurisdiction over appeals from the MSPB's final decisions as to non-"mixed case" complaints, 28 U.S.C. § 1295(a)(9), the present action was not appealed from the MSPB; it was appealed from the EEO process. Thus, *Noble* does not control the issue at hand.

A review of 29 C.F.R. § 1614.302(a)(1) and (d)(1)(i) establishes that a plaintiff may properly bring a "mixed case" complaint through an employer-agency's EEO process, and then, if the agency takes no action within 120 days, bring the "mixed case" complaint to the district court. The language of these regulations indicates nothing to the contrary.

Our view is bolstered by cases from other circuits that have considered what happens when a "mixed case" complaint, properly appealed to the district court from the MSPB, subsequently loses its discrimination component. The D.C. Circuit declined to hold that the subsequent dismissal of the discrimination portion of a "mixed case" complaint vitiated the district court's subject matter jurisdiction, reasoning that jurisdiction properly existed at the time the "mixed case" complaint was filed with the district court and that no statutory authority exists "suggest[ing] that the jurisdiction thereby conferred on the district court dissolves upon dismissal of one claim where original jurisdiction otherwise properly exists." *Evono v. Reno,* 216 F.3d 1105, 1109 (D.C. Cir. 2000). In considering similar procedural facts, the Fourth Circuit held that a nondiscrimination claim should not be dismissed under these circumstances, so long as the discrimination claim was not a "sham or frivolous," and that the district court had the discretion either to retain the case or to transfer it to the Federal Circuit, which had attained

jurisdiction by virtue of the discrimination claim's subsequent elimination. *Afifi v. United States Dep't of Interior,* 924 F.2d 61, 63-64 (4th Cir. 1991).

Unlike *Afifi,* this case presents no opportunity for a transfer to the Federal Circuit, because it originated from the EEO process, not the MSPB. However, the reasoning is directly on point: A plaintiff ordinarily should not be punished (by way of dismissal) for events unforeseen at the time the case was filed. Moreover, at no time has either party or the district court suggested that the discrimination claim Plaintiff voluntarily dismissed was a sham or frivolous. *Id.* at 64.

TVA also argues that even if subject matter jurisdiction existed, Plaintiff waived his rights to pursue Counts 126, 127, and 131 because he voluntarily abandoned the discrimination components of these claims and consequently failed to develop an administrative record at the MSPB. TVA's rationale is that while Title VII claims are reviewed by the district court de novo, procedural claims are reviewable only on the record, pursuant to 5 U.S.C. § 7703(c), the statute controlling MSPB procedure.

We disagree. On-the-record review is required for nondiscrimination claims only if the "mixed case" complaint is appealed from the MSPB. In contrast, a "mixed case" complaint from an agency's EEO process, on judicial review at a district court, is reviewed de novo. This can be found right in the statutory language regarding appeals: "Nothing in this section shall be construed to affect the right to trial de novo under any provision of law described in subsection (a)(1) of this section after a judicially reviewable action, *including the decision of an agency under subsection (a)(2) of this section.*" 5 U.S.C. § 7702(e)(3) (emphasis added). Subsection (a)(2) refers to "any matter before an agency which involves (A) any action described in paragraph (1)(A) of this subsection [i.e., an action which the employee or applicant may appeal to the MSPB]; and (B) any issue of discrimination prohibited under any provision of law

described in paragraph (1)(B) of this subsection." 5 U.S.C. § 7702(a)(2). In other words, subsection (a)(2) refers to any cause of action encompassing an MSPB claim *and* a discrimination claim. It refers to a *mixed* claim. If a district court may analyze the MSPB issues de novo when a "mixed case" complaint is appealed from an agency's EEO process, the subsequent abandonment of the discrimination claim in the district court cannot make the necessity for an administrative record suddenly appear. TVA cannot point to any statutory authority to indicate that a plaintiff is to be disadvantaged in retrospect for abandoning a claim after initially pursuing the claim in district court, or that nondiscrimination claims must always be reviewed on an administrative record.[3]

Thus, we hold that subject matter jurisdiction exists over these nondiscrimination claims. Moreover, Plaintiff was not

---

[3]TVA relies principally on two cases for the proposition that nondiscrimination claims must always be reviewed on an administrative record. The first is *Johnson v. Burnley,* 887 F.2d 471, 474 n.1 (4th Cir. 1989), *vacated en banc and appeal dismissed,* 887 F.2d at 471, which stated that "[i]n a mixed case . . . the discrimination claim receives a *de novo* trial in the district court, while the non-discrimination claim is reviewed on the record." (citations omitted) However, *Johnson* was speaking of judicial review in the context of a case appealed from the MSPB. In the present case, Plaintiff is appealing from TVA's EEO process.

TVA also cites *Mason v. Frank,* 32 F.3d 315 (8th Cir. 1994). At the district court the *Mason* plaintiff successfully objected to the entry of the MSPB into the record because he was pursuing his discrimination claim only and the MSPB record was therefore irrelevant. *Id.* at 318. The Eighth Circuit held that Plaintiff could not subsequently reassert the nondiscrimination claim after having prevented the MSPB record from being entered at the district court. *Id. Mason* is distinguishable on two bases. First, the *Mason* plaintiff, like the *Johnson* plaintiff, appealed his "mixed case" complaint to the district court from the MSPB. Second, the court's reasoning was based on principles of estoppel, not any statutory authority requiring an administrative record. Thus, *Mason* is inapposite as well.

required to develop an administrative record with respect to his nondiscrimination claims because claims, when appealed from an agency's EEO process, are reviewed de novo. Consequently, Plaintiff did not waive any right to have his nondiscrimination claim heard by the district court, and the district court erred in ruling otherwise. We therefore will address the merits of those decisions now.

## B. Count 123--Violation of TVA's Hiring and Retention Policy for Disabled Veterans

Plaintiff argues that the district court erred in dismissing his challenge to enforce TVA's hiring and retention policy for disabled veterans. The policy reads as follows:

The Tennessee Valley Authority (TVA) has an up-to-date Affirmative Action Plan (Plan) that is committed to the hiring, retention, and advancement of disabled veterans. This Plan is consistent with statutory requirements under Title 38 U.S.C., Section 2015(c), included as part of TVA's affirmative action obligations for the disabled under Section 501(b) of the Rehabilitation Act of 1973.

TVA is committed to ensuring affirmative action for the employment and advancement of qualified disabled veterans, especially those veterans who are rated at 30 percent or more disabled. No individual may be denied employment, developmental opportunities, or advancement, nor may disciplinary action be taken against him/her solely because of physical or mental disability.

This commitment to employ, retain, and advance qualified disabled veterans shall apply to all supervisors, managers, and other officials in a position to influence personnel policies/practices.

(J.A. at 426.) The district court held that no private cause of action existed for Plaintiff to enforce a corporately-adopted plan. Plaintiff argues on appeal that because TVA's policy is federally mandated, a private cause of action exists to enforce the affirmative action benefits contained therein. Specifically, Plaintiff points to § 501(b) of the Rehabilitation Act of 1973, 29 U.S.C. § 791(b), which requires federal employers to adopt an affirmative action policy for the hiring, placement, and advancement of disabled individuals, and § 403(c) of the Vietnam Era Veterans' Readjustment Assistance Act (VEVRA), 38 U.S.C. § 4214(c), which requires employers who enter into certain contracts with the United States to adopt "a separate specification of plans . . . to promote and carry out such affirmative action with respect to disabled veterans in order to achieve the purpose of this section."

As an initial matter, it is not entirely clear whether this policy to which Plaintiff points is federally mandated. Although the parties agree that TVA is subject to § 501 of the Rehabilitation Act and § 403 of VEVRA, TVA maintains that the policy is voluntary and that there exists a "separate specification" under its Rehabilitation Act-mandated policy. However, TVA fails to point to anything in the record that would constitute the "separate specification" that VEVRA requires. At any rate, we need not decide this issue because even if this policy is the VEVRA-required "separate specification," no private remedy exists. We have already held that VEVRA does not extend a private cause of action to aggrieved veterans such as Plaintiff. *Harris v. Adams,* 873 F.2d 929, 932 (6th Cir. 1989). Although Plaintiff argues that not allowing a private right of action would render § 4214 meaningless, this is not the case. As we previously explained, "veterans who believe themselves to be victims of discrimination may complain to the Secretary of Labor, who enforces [VEVRA] administratively." *Id.* at 931 (citing predecessor to 38 U.S.C. § 4212(b)).

Plaintiff contends alternatively that the Rehabilitation Act provides a private remedy. However, the Rehabilitation Act

does not require an affirmative action policy for disabled veterans. Section 501 of the Act requires each federal agency to submit "an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution." 29 U.S.C. § 791(b). To this end, § 501 provides a private remedy for individuals who encounter discrimination on the basis of disability. *Mahon v. Crowell,* 295 F.3d 585, 589 n.2 (6th Cir. 2002). However, we do not read the Rehabilitation Act as extending its private remedy to the rights contained in VEVRA. The only nexus between the Rehabilitation Act and VEVRA is that VEVRA requires a "separate specification" for disabled veterans to be included in the Rehabilitation Act-required affirmative action policy for disabled individuals. The fact that VEVRA references the Rehabilitation Act for this purpose does not mean it implicitly incorporates all rights contained in the Rehabilitation Act into VEVRA. *See Antol v. Perry,* 82 F.3d 1291, 1297 (3d Cir. 1996) (rejecting the plaintiff's argument that Congress' amendment of the Rehabilitation Act to waive sovereign immunity and include a private remedy for aggrieved disabled individuals meant that § 403 of VEVRA was also implicitly amended, and reasoning that it could not "enlarge the waiver [of sovereign immunity] in the Rehabilitation Act 'beyond what the language of the statute requires'") (quoting *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.,* 508 U.S. 1, 7 (1993)). Therefore, no private remedy exists for Plaintiff on this issue.[4]

---

[4]TVA also suggests that an action upon any other basis (other than VEVRA or the Rehabilitation Act) is preempted by the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified in various sections of titles 5, 10, 15, 28, 31, 38, 39, and 42 U.S.C.). Because of our determination that no private remedy exists for Plaintiff, we need not reach this issue.

### C.   Count 125:   Violation of Supplementary Agreement 10 to the Collective Bargaining Agreement

Next, Plaintiff challenges the district court's dismissal of Count 125 of his amended complaint, which alleged that TVA violated his reemployment RIF rights under its own policy for displaced policy veterans, namely, a document known as "Supplementary Agreement 10," which is part of the collective bargaining agreement between TVA and the union representing TVA's employees. Specifically, Supplementary Agreement 10 "governs the elimination of positions and termination of employees through a [RIF]." (J.A. at 392, 394-404.) It provides to "RIF'd" employees an opportunity to be placed on a reemployment list for up to two years following termination "for jobs for which the employee indicates interest and availability at the time of separation and which are in the same classes as jobs he/she has held in TVA." (J.A. at 397.) The Supplementary Agreement also includes a veterans' preference in rehiring.

It does not appear to be disputed that Plaintiff received his veterans' preference regarding the RIF; i.e., among the employees in his work group, he was the last to be subjected to the RIF, but because the entire department was eliminated, he, as well as his coworkers, was RIF'd. Plaintiff contends, however, that TVA did not follow Supplementary Agreement 10 with respect to rehiring preferences. Plaintiff notes that his colleague Ronald Stamps, another Safety Specialist in the Labor and Safety department who was terminated at the same time as Plaintiff, subsequently received a position that became available. Plaintiff contends that Stamps' rehire contravened Supplementary Agreement 10, which required TVA to offer the job to Plaintiff first. Plaintiff also contends that pursuant to Supplementary Agreement 10, he should have been offered positions less senior to the one he held at the time of his RIF. Plaintiff was ranked SD-4 at the time of his RIF, and he had previously been employed in the SD-3 classification. Plaintiff claims TVA violated Supplementary Agreement 10 by failing to offer him a reassignment to any of

the available SD-3 positions or reemployment to those positions after his termination.

Because Plaintiff did not follow the grievance procedure for alleged contractual violations, the district court dismissed this claim for failure to exhaust administrative remedies. TVA asserts the district court's reasoning on appeal. Plaintiff argues that he was not required to follow the grievance procedure because TVA had adopted Supplementary Agreement 10 as its corporate policy, and therefore the collective bargaining agreement grievance procedures did not apply. However, the record reflects no evidence that TVA adopted Supplementary Agreement 10 as its corporate policy, and we will not make this finding now.

Plaintiff argues alternatively that Supplementary Agreement 11 of the collective bargaining agreement allows claimants to bypass the grievance procedure. Supplementary Agreement 11 provides that "[i]f an appeal or formal complaint with respect to an action, matter, or proposed action is or has been filed under a separate procedure provided by law or Federal regulations, a grievance regarding such action, matter, or proposed action will not be considered or, if in progress, will not be further considered or decided under this agreement." (J.A. at 403-04.) Plaintiff argues that because he placed his grievance about Supplementary Agreement 10 in his "mixed case" complaint filed through TVA's EEO process, he could not simultaneously pursue the complaint through the collective bargaining agreement grievance process. We agree with Plaintiff that he pursued a legitimate alternative route, based on the language in Supplementary Agreement 11.

### 1.   Reemployment Rights

Turning our attention to the merits, Plaintiff's claim to reemployment rights fails. The reemployment list policy enables a RIF'd employee to have his or her name placed on the list for two years "for jobs for which the employee

indicates interest and availability at the time of separation and which are in the same classes as jobs he/she has held in TVA." (J.A. at 397.) Plaintiff completed an Interest and Availability for Reemployment Following RIF form; however, he listed among the job classifications and grades for which he wished to be considered only Safety Specialist, SD-4 grade. Plaintiff did not indicate a desire to be considered for any SD-3 positions. Therefore, Ronald Stamps, who indeed was RIF'd on the same day as Plaintiff and retained a lower preference than Plaintiff, received the position at issue because the position for which he was rehired was of the SD-3 grade and Plaintiff did not request to be considered for this type of job. Therefore, this claim lacks merit.

### 2. Reassignment Rights

However, there does appear to be a genuine issue of material fact regarding whether Plaintiff was afforded his reassignment rights pursuant to the collective bargaining agreement. Supplementary Agreement 10 provides that a RIF'd employee with at least ten years of service "may displace another employee in the same competitive area, but in a different competitive level, by application of reduction in force procedures." (J.A. at 397.) Thus, applicable RIF'd employees may be reassigned to any available lower-grade position they have held on a non-temporary basis. Such employees are placed on a retention register, which lists the grade levels for which each employee is eligible and states whether positions in those grade levels are available.

Among those listed in the Retention Register was Plaintiff, who was designated "RR [Return Rights to] Safety Specialist, SD-3 (No position available)." (J.A. at 1160.) The record indicates that Plaintiff had served in positions of the grade levels SD-2, SD-3, SE-3, and SE-4. Deposition testimony from Jimmy Raines, General Manager of Human Resources at TVA, acknowledged that at least one SD-3 position was available but was not listed on the retention register. TVA

offers no explanation for the discrepancy, but presumably Plaintiff (or one of his colleagues of comparable or greater preference) should have been offered the opportunity to be reassigned to the lower level position, and this evidently did not happen. A good explanation for the discrepancy still might exist; however, we find that a genuine issue of material fact remains as to whether TVA provided to Plaintiff his reassignment rights pursuant to Supplementary Agreement 10 of TVA's collective bargaining agreement. Therefore, we reverse the district court's grant of summary judgment in favor of TVA on this claim with respect to Plaintiff's reassignment rights.

### D. Count 126: Violation of Plaintiff's Procedural RIF Rights

In Count 126, Plaintiff had asserted violations of three RIF rights: (1) veterans' preference in retention of employees; (2) "bumping and retreating" rights; and (3) reemployment rights.

### 1. Veterans' Preference in Retention Rights

Plaintiff appears to argue that TVA failed to exercise all means to retain Plaintiff in his Safety Specialist, SD-4 position when implementing the RIF. However, it is not disputed that Plaintiff, as a disabled veteran, was placed at the top of the list (i.e., he would be the last in his department to be RIF'd). All of the employees in the Safety Specialist department were RIF'd, and therefore Plaintiff is without a legitimate complaint in this regard.

### 2. Bumping and Retreating Rights; Reemployment Rights

Plaintiff also argues that TVA failed to accord him all of his bumping, retreating, and reemployment rights, pursuant to 5 C.F.R. § 351.701:

When a group I or II competitive service employee with a current annual performance rating of record of minimally successful (Level 2) or equivalent, or higher, is released from a competitive level, an agency shall offer assignment, rather than furlough or separate, in accordance with paragraphs (b), (c), and (d) of this section to another competitive position which requires no reduction, or the lease [sic] possible reduction, in representative rate.

*Id.* § 351.701(a).   Subsections (b) and (c) detail the requirements for "bumping" (the right of one employee to displace another employee in a lower subgroup) and "retreating" (the right to take a position within the same subgroup but held by someone with a lower retention standing). *Id.* § 351.701(b), (c). Plaintiff argues that TVA only considered him for a SD-3 position, when in fact his bumping privileges entitled him to consideration for SD-2 and SD-1 positions as well. Plaintiff also argues that TVA did not accord him his retreating privileges either.

However, as TVA correctly points out, § 351.701 applies only to employees in the competitive service. *See* 5 C.F.R. § 351.701(a). The next question is whether Plaintiff was employed in the competitive or excepted service. It does not appear that we have squarely decided this issue,[5] but the Federal Circuit has. In *Dodd v. Tennessee Valley Authority,* 770 F.2d 1038 (Fed. Cir. 1985), the court looked at the definition of "competitive service," under 5 U.S.C. § 2102, which is "all civil service positions in the executive branch, except (A) positions which are specifically excepted from the

---

[5]However, at least one district court within this circuit has. *See Pulley v. Tenn. Valley Auth.,* 368 F. Supp. 90, 93 (M.D. Tenn. 1973) ("TVA employees are not subject to the Civil Service Act, and are not in 'competitive service' as defined in said Act.") (citations omitted). *See also Jones v. Tenn. Valley Auth.,* 948 F.2d 258, 262 (6th Cir. 1991) (observing without discussion that the plaintiff, a TVA preference eligible veteran employee, was in the excepted service).

competitive service by or under statute."   5 U.S.C. § 2102(a)(1)(A). The statute authorizing the TVA indicates that "[t]he board shall *without regard to the provisions of Civil Service laws applicable to officers and employees of the United States,* appoint such managers, assistant managers, officers, employees, attorneys, and agents as are necessary for the transaction of its business." 16 U.S.C. § 831b (emphasis added).   This means that TVA is exempted "from conditioning its appointments on the passage of a competitive examination. The competitive examination is the touchstone of the competitive service." *Dodd,* 770 F.2d at 1040. We agree with the Federal Circuit's analysis and hold that TVA employees are not in the competitive service. Consequently, TVA employees are not entitled to the rights contained in 5 U.S.C. § 2102 or 5 C.F.R. § 351.701. Accordingly, Plaintiff was not entitled to these retention preferences, and we affirm the district court's dismissal of Count 126.

### E.   Count 127: Violation of Plaintiff's Substantive RIF Rights

Plaintiff also challenges his RIF on various substantive grounds. Specifically, he challenges the "overall legitimacy of the reorganization" that caused his RIF. In responding to such a claim, TVA bears the burden to demonstrate, by a preponderance of the evidence, that the RIF was legitimate and was properly applied to the individual employees. *See Gandola v. FTC,* 773 F.2d 308, 313 (Fed. Cir. 1985) ("If the agency proves that the reduction in force regulations were invoked for a legitimate reason and that those regulations were properly applied to the individual employees . . . the agency action will be sustained.") (citation omitted); *Wilburn v. Dep't of Transp.,* 757 F.2d 260, 262 (Fed. Cir. 1985) ("An agency has the burden of demonstrating to the board that its action is supported by a preponderance of the evidence . . . .").

It is not disputed that the RIFs were part of a reorganization, undertaken by TVA, of several departments.

A reorganization is an appropriate reason for a RIF. *See* 5 C.F.R. § 351.201(a)(2) ("Each agency shall follow this part when it releases a competing employee from his or her competitive level . . . when the release is required because of . . . reorganization . . . ."); *Gandola,* 773 F.2d at 312 (holding that a RIF taken "to reduce the manpower within the ceiling allocation" constituted "an appropriate management consideration") (internal quotation marks omitted). Moreover, it is not disputed that the RIF applied to everyone in Plaintiff's department; therefore it occurred in an even-handed manner. Plaintiff's suspicions about the consultant, Scott Madden, who had advised TVA to undertake the reorganization, are insufficient to overcome TVA's showing that the RIF occurred pursuant to "bona fide management considerations." *Gandola*, 773 F.2d at 312. Because TVA met its burden of demonstrating that the RIF was legitimate, and Plaintiff has not asserted any genuine issue of material fact to rebut the RIF's evident legitimacy, we affirm the district court's grant of summary judgment to TVA on this claim.

## F.   Count 131:   Adverse Action as to Plaintiff's RIF Rights

Count 131 of Plaintiff's amended complaint sought a review of his RIF pursuant to MSPB guidelines. However, Count 131 does not allege that TVA committed any particular violation in conducting the RIF. Moreover, on appeal Plaintiff does not advance any theories to support this claim. Because we cannot discern from the vague reference to "MSPB standards" what Plaintiff's argument is, we affirm the district court's dismissal of this count.

## V

Plaintiff also challenges his sixty-day suspension for violating TVA's vehicle use policy. Count 128 challenged

the validity of the suspension,[6] and Count 129 alleged that TVA subjected Plaintiff to racially disparate treatment by suspending him for sixty days, while suspending white employees for only thirty days for the same offense. TVA's vehicle use policy reads as follows:

> An officer or employee of the United States Government or of the District of Columbia government violating section 1341(a) or 1342 of this title shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office.

31 U.S.C. § 1349.

As to Count 128, Plaintiff argues that genuine issues of material fact remain as to whether the suspension was appropriate. Specifically, Plaintiff argues that a genuine issue remained as to whether he *willfully* violated the policy. In support, Plaintiff points to the October 7, 1991 issue of TVA's daily publication, "TVA Today," which announced a change in the vehicle use policy:

> Employees may now use TVA vehicles or rental cars for incidental purposes without getting their supervisors' permission. The policy change is effective immediately. Supervisors have been sent background information about the change to help answer employees' questions. Details are in the Oct. 8 issue of Inside TVA.

---

[6] In an argument similar to that advanced regarding Counts 126, 127, and 131, TVA argues that the district court properly dismissed Count 128 because Plaintiff failed to develop an administrative record with the MSPB. As we have already discussed, the nondiscrimination component of a "mixed case" complaint, when appealed from the EEO process, may properly be reviewed de novo by a district court. *See* IV.A, *supra.* Therefore, TVA's argument in this regard lacks merit.

(J.A. at 1270.)  Plaintiff argues that because TVA started to allow employees to use the TVA vehicles for incidental purposes, he thought he was permitted to drive from Raccoon Mountain to Birmingham for his law school class, which was 139 miles away.

Plaintiff's argument is insufficient to establish a genuine issue of material fact.  First of all, there is no dispute that the statute mandates penalties for violators of this statute.  Second, we seriously doubt that any reasonable juror would believe, in good faith, that a 139-mile trip (one way) is incidental, or that an employee would reasonably believe that such a trip was incidental.  Because we find that Count 128 lacks merit, we affirm the dismissal of that count.

Plaintiff also argues that the district court erred in dismissing Count 129 (racially disparate treatment regarding Plaintiff's suspension) because genuine issues of material fact remain as to whether TVA engaged in racial discrimination in violation of Title VII by suspending Plaintiff for sixty days when it suspended white violators of the policy for only thirty days.

In order to establish a prima facie claim of disparate treatment, a plaintiff must "produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992).  Moreover, "the plaintiff must show that the 'comparables' are similarly-situated in all respects, absent other circumstantial or statistical evidence supporting an inference of discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell,* 964 F.2d at 583) (internal quotation marks omitted). This means a plaintiff must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." *Pierce*

*v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994).

The parties dispute whether Plaintiff can satisfy the "similarly-situated" requirement.  Plaintiff points to four employees: Danny Seal (no discipline), Tanveer Khalid (no discipline), Guy Kidd (thirty-day suspension), and Roy Mason (thirty-day suspension).  Although these employees all misused TVA vehicles and received less discipline, the facts surrounding Seal's, Khalid's, and Kidd's violations differ in relevant respects from the facts surrounding Plaintiff's violation.   In the cases of Seal and Khalid, TVA's investigation determined that their respective supervisors had approved their misuses of the TVA vehicles (and therefore those employees were not disciplined because they did not willfully violate the policy), whereas nobody had approved Plaintiff's misuse.  Plaintiff has offered nothing to contradict the accuracy of this finding.  Kidd used a TVA vehicle to take his wife and neighbor to church on one occasion, whereas Plaintiff received a sixty-day suspension because he misused a TVA vehicle "on two separate occasions."  (J.A. at 493.) Because of these relevant differences, we do not believe that these three non-protected employees Plaintiff identified are sufficiently "similarly-situated" for Plaintiff to establish his prima facie case.

However, Plaintiff has also identified Roy Mason, a white employee who had used a TVA vehicle to haul his boat to a lake.  The record indicates that Mason's violation was not approved by any of Mason's superiors and that the violation occurred on two occasions. Despite these similarities, Mason was suspended for only thirty days, while Plaintiff received sixty days.

TVA nevertheless asserts that Mason is not similarly-situated because he and Plaintiff worked in different TVA departments  and had different supervisors.  It is true that similarly-situated employees ordinarily "must have dealt with the same supervisor, have been subject to the same standards

and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583 (citations omitted). However, the "same supervisor" criterium has never been read as an inflexible requirement. The requirement is particularly problematic here, where a violation such as vehicle misuse does not occur frequently enough to invite such a direct comparison within a compartmentalized organization. *See Ercegovich,* 154 F.3d at 353 (noting that inflexible criteria for establishing the similarly-situated requirement would mean that "a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case (absent direct evidence of discrimination)"). In such cases, we have emphasized the importance of "mak[ing] an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* at 352. Thus, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment" so long as the two employees are "similar in 'all of the relevant aspects.'" *Id.* (citing *Pierce,* 40 F.3d at 802).

In the present case, the record indicates that the decision to suspend Plaintiff for sixty days was not made in a vacuum. Several discussions took place, as well as a meeting in which participants included Johnson (Plaintiff's immediate supervisor), Walters (the Labor Relations and Safety Department manager and Johnson's supervisor), a representative from TVA's human resources department (which is involved in any type of disciplinary action), and a representative from TVA's legal department. Past discipline for similar misuses was discussed at that meeting. Thus, all of the people involved in the decision-making process, including Plaintiff's immediate supervisor and the department manager, were well-aware of the discipline meted out to past violators, including Roy Mason, who had violated the policy on at least two occasions. Moreover, TVA does not dispute

that Mason and Plaintiff were "subject to the same standards" or that Mason's conduct included "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. Despite the similar circumstances, Plaintiff was punished for a time period that was twice as long as Mason's. We therefore conclude that Plaintiff has demonstrated that he and Mason were similarly-situated in all relevant respects. Because Plaintiff satisfied his prima facie case with respect to Count 129, we reverse the district court's grant of summary judgment to TVA on this claim.

## VI

Finally, Plaintiff argues that the district court erred in denying his motion to strike evidentiary submissions TVA presented with its reply brief. He argues that this was prejudicial to his case because he was not allowed to respond to the new evidence TVA submitted with its reply brief.

"We review the decision to grant or deny a motion to strike for an abuse of discretion, and decisions that are reasonable, that is, not arbitrary, will not be overturned." *Collazos-Cruz v. United States,* 117 F.3d 1420 (Table), 1997 WL 377037, at *2 (6th Cir. July 3, 1997) (*per curiam*) (citing *Whitted v. Gen. Motors Corp.,* 58 F.3d 1200, 1203 (7th Cir. 1995)); *see also Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th Cir. 1998) (applying an abuse of discretion standard to the district court's ruling allowing the defendant to file a reply brief but denying the plaintiffs' motion to file a surreply brief).

The facts demonstrate that with respect to TVA's first and third motions for partial summary judgment, Plaintiff filed opposition papers, and more than five days later TVA filed reply briefs, to which it attached additional evidence in the form of declarations with exhibits. The additional evidence was not included with TVA's original motions. Plaintiff filed motions to strike these evidentiary submissions, and the district court denied Plaintiff's motions. Plaintiff argues on

appeal that the district court abused its discretion in allowing these evidentiary submissions because (1) the reply briefs were not timely filed pursuant to Local Rule 7.1(a) of the Eastern District of Tennessee,[7] and (2) in granting summary judgment, the district court relied on new evidence in TVA's reply briefs without first affording Plaintiff an adequate opportunity to respond to that new evidence.[8]

In denying Plaintiff's motions to strike, the district court reasoned that TVA's evidentiary submissions merely pointed out additional facts that Plaintiff had in his possession and could have addressed in his response brief, and that the Federal Rules of Civil Procedure did not preclude TVA from including these new submissions in its reply brief.

We only partially agree with the district court. Although the second and third reply briefs were not timely filed in accordance with Local Rule 7.1, we do not agree with Plaintiff that it would always be appropriate, barring extreme circumstances, for us to preclude a submission to the district court for failure to comply with the requirements of a local rule. *Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 205 (6th Cir. 1998) (citing *Stough v. Mayville Comm'ty Schs.,* 138 F.3d 612, 614-15 (6th Cir. 1998)). Enforcing timely filing, on these facts, does not constitute an extreme circumstance. We therefore are not inclined to reverse based on the district

---

court's decision not to strictly enforce Local Rule 7.1. However, we conclude that the district court was not entitled to enter summary judgment for TVA under these circumstances, inasmuch as Plaintiff was not accorded an adequate opportunity to respond to the new evidence presented with TVA's reply briefs.

When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c). Rule 56(c) requires that an adverse party receive ten days notice before a district court may enter summary judgment. Fed. R. Civ. P. 56(c); *Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995). The purpose of Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986) (holding that summary judgment is to be entered only if the nonmovant is on notice that it must come forward with all of its evidence). It is only logical that the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond. *Beaird,* 145 F.3d at 1164-65 (citing *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 410 (1st Cir. 1985)). This is particularly true when the district court relies on the new evidentiary submissions.[9]

---

[7] Local Rule 7.1 sets a default briefing schedule for motion practice, providing that "any reply brief and accompanying material shall be served and filed no later than 5 days after the service of the answering brief." E.D. TENN. LOCAL R. 7.1.

[8] Plaintiff also argues on appeal that the district court erred in allowing evidentiary submissions in TVA's reply brief in support of its fourth summary judgment motion. However, Plaintiff did not move to strike these evidentiary submissions below; he moved to strike the amended summary judgment motion. Therefore, we will not consider any of Plaintiff's arguments with respect to the fourth summary judgment motion here.

[9] TVA argues on appeal that Plaintiff could have filed a surreply, pursuant to Eastern District of Tennessee Local Rule 7.1(d). *See* E.D. TENN. LOCAL R. 7.1(d). However, this is beside the point, as the district court granted summary judgment only three days after TVA filed the reply brief, arguably too swiftly for Plaintiff to have requested a surreply. TVA also cites *Peters v. Lincoln Electric Co.,* 285 F.3d 456, 476-77 (6th Cir. 2002), which held that the district court did not err in considering an affidavit submitted with a reply brief because the plaintiff had an

In this case, most of TVA's additional submissions consisted of evidence Plaintiff already had included among his evidentiary submissions to the district court. However, at least one of TVA's submissions involved new evidence. The new evidence concerned a declaration from Rowena Belcher, General Manager of Human Resources for TVA's Chief Operating Officer Fossil Power Group organization. The declaration was dated March 22, 2001, seven days after Plaintiff filed his papers in opposition to TVA's summary judgment motion. Exhibits C and D attached to the declaration involved newly-produced evidence. The district court issued an order granting TVA's motion just three days after TVA's reply brief was filed. In so doing, the court relied on the Belcher declaration and its attached evidence in dismissing Count 46 of Plaintiff's amended complaint. We therefore hold that the district court abused its discretion in granting summary judgment so quickly without allowing Plaintiff an adequate opportunity to respond to the new evidence.

We need not reverse the dismissals of any other counts in Plaintiff's amended complaint. The district court relied on the new evidence in dismissing only Count 46, and Plaintiff elected not to appeal the dismissal of this claim. However, in adjudicating the four counts we remand, the district court is precluded from considering any of the new submissions attached to TVA's first and third reply briefs until Plaintiff has been provided an adequate opportunity to respond to that new evidence.

---

opportunity to respond to the evidence. However, *Peters* concerns Federal Rule of Civil Procedure 6(d), which requires that "[a] written motion . . . and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing." Fed. R. Civ. P. 6(d). Even if *Peters* had concerned the Rule 56(c) context, the fact remains that the district court failed to allow Plaintiff a reasonable amount of time to respond in one form or another.

## VII

For all the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of TVA on Counts 15, 123, 125 (with respect to reemployment rights), 126, 127, 128, and 131. However, we **REVERSE** the grant of summary judgment in favor of TVA on Counts 67, 75, 125 (with respect to reassignment rights), and 129, as well as the district court's denial of Plaintiff's motion to strike the new evidentiary submissions attached to TVA's first and third reply briefs. We **REMAND** those claims to the district court for further consideration not inconsistent with this opinion.