**Michael YOUNG, Plaintiff,**

v.

**OAKLAND COUNTY, Defendant.**

**No. CIV. 03–40143.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 29, 2004.

Daniel Randazzo, Sylvan Lake, MI, for Plaintiff.

William G. Pierson, Oakland County Corporation Counsel, Pontiac, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Michael Young brings this action against Defendant Oakland County claiming employment discrimination on account of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges that Defendant discriminated against him on the basis of race by failing to interview and hire him for the position of Chief Community Corrections Field Operations Manager.

Before the Court is Defendant's motion for summary judgment, filed on March 18, 2004. The Court held a hearing on the motion on November 15, 2004. Defendant failed to appear at the hearing and the Court proceeded without the benefit of Defendant's argument. Regardless, after reviewing all the filings in this matter, the Court will grant Defendant's motion because Plaintiff has failed to make out a *prima facie* case of discrimination and Defendant's reason for not hiring Plaintiff is not pretextual.

## I. Background

Defendant uses an equal employment opportunity policy, an affirmative action policy, and a system of merit rules for filling vacancies in county positions. Following those policies, Defendant announced an opening for the position of Chief Community Corrections Field Operations on January 14, 2002. Although experience with the criminal justice system was not listed as a requirement for obtaining the job, the description quite clearly indicated that, as alluded to by the position's title, a great portion of the job dealt with the criminal justice system. The description was as follows:

Under limited direction, is responsible for supervising Pretrial Service unit employees and support staff. Reviews reports concerning the status of inmates housed in the Oakland County Jail. Assists the court in the more complex bonding considerations and other alternatives. Prepares and presents regular reports based on program statistics to appropriate officials. Monitors the pretrial Services program budget. Responds to and initiates correspondence to a variety of individuals within the

criminal justice system. Participates in developing, implementing, and updating policies and procedures for the consistent operation of Pretrial Services including the customized database Pretrial on Line [sic]. Assists with establishing long range goals and strategies for the division. Assists the manager in the development of the division budget and in the presentation to the Board of Commissioners and related committees. Assists the manager in the development of the state grant application. Functions as a liaison concerning the Pretrial Services Program to various committees and agencies.

Def. Mot., Ex. 3. As the job description indicates, the position of Chief Community Corrections Field Operations requires more than mere interaction with the criminal justice system, or even the managing of criminal justice employees. The position is responsible for the formation of policies and procedures and the actual development of the Pretrial Services. Whoever is hired must serve as Pretrial Service's liaison to other agencies, be responsible for inmates in the Oakland County Jail, and assist the Oakland County Court with complex bond issues. Needless to say, criminal justice experience would be a significant asset in such a position.

The position's minimum qualifications, however, were a master's degree in public or business administration, criminal justice, social work, sociology, psychology, or related areas; and a least four years full-time case work or related work experience involving interviewing, investigating and counseling practices, procedure and techniques, and a valid driver's license. *Id.* Experience in the criminal justice field, then, was not listed as a requirement as such.

Plaintiff, who has a master's degree in business administration and twenty-one years of employment at General Motors Corporation, applied for the position on March 1, 2002. Initially, Plaintiff was rejected because he did not meet the minimum qualifications. In response to this rejection, Plaintiff hand delivered a letter which he characterized as a formal appeal. Defendant replied in writing that Plaintiff's application was rejected because he appeared to lack the required caseload and counseling experience. The letter explained that Plaintiff's application would nevertheless be accepted, because Defendant would consider information Plaintiff had submitted in a prior application. Plaintiff has applied for numerous positions with Defendant, but has only obtained one interview to date.

Defendant then asked Plaintiff to complete the next step in the process, which was a training and experience questionnaire. The questionnaire consisted of four questions. Based on the completed questionnaire, Plaintiff was informed on March 28, 2002, that he had passed the Chief Community Corrections Field Operations examination with a final score of 100 and his "rank on the eligible list [was] 'Top Five.'" Pl. Resp., Ex. G. According to Defendant, anyone who answered yes to all four questions received a score of 100 and was placed on the "Top Five" list. In fact, there were twenty-nine candidates who scored 100 on the exam and were placed in what Defendant calls the "Top Five" eligible list.

According to Defendant, the names on the "Top Five" list are not ranked and are listed in random order, and the fact that Plaintiff's name appeared second on the list had no meaning. Of the twenty-nine "Top Five" candidates, there were nine Caucasian females, nine Caucasian males, six African American females, four African

American males, and one male of unidentified race. Six persons were interviewed for the position. All six interviews were conducted on March 25, 2002. The interviews were conducted before Plaintiff finished proving his eligibility. Plaintiff first appeared on the eligible list when it was in its fourth revision, which revision was sent out on April 3, 2002. Defendant's merit rules allow for the best candidate to be hired at any time during the interview and hiring process.

Of the six interviewed, three were African American females, two were Caucasian males, and one was a Caucasian female. Three of the six had no direct criminal justice experience. Ultimately, one of the six, a Caucasian male, Robert Gatt, was hired. Mr. Gatt's application materials demonstrated that he possessed extensive experience in the criminal justice system, whereas Plaintiff's application materials demonstrated that he possessed no experience in the field. Defendant maintains that it has an obligation to hire the best candidate for the job regardless of race or any other factor.

Defendant believes that the "Top Five" misnomer is what caused Plaintiff to believe that he was passed over for the position on account of his race. Plaintiff, himself, sees no reason other than race why he could be placed in the top five yet not receive an interview when Defendant interviewed six candidates. Plaintiff points out that the Affirmative Action report prepared by the county for both 2001 and 2002 indicates that the classification and department for which Plaintiff applied had not met the goal for utilizing minorities. However, Defendant's obligations under its affirmative action policy are not requirements, but goals. Furthermore, the information on race supplied by the candidates is used for statistical purposes only, and those making the hiring decision are not informed of a candidate's race prior to the interview, though they do know generally that minorities have applied.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct.

2505; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. Analysis

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer to fail or refuse to hire any individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). "To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case, which creates an inference of discrimination based on circumstantial evidence." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003). If a plaintiff chooses to rely on a *prima facie* case of discrimination, he must utilize the burden shifting approach laid down by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*McDonnell Douglas* first requires a plaintiff to make out a *prima facie* case of discrimination. In a failure to hire case, such as this one, a *prima facie* case is established by showing that (1) Plaintiff belonged to a protected class; (2) Plaintiff applied and was rejected; (3) Plaintiff was qualified for the position; and (4) a similarly situated person who was not in Plaintiff's protected class received the job. *Seay*, 339 F.3d at 463. If Plaintiff establishes a *prima facie* case, then the burden shifts to Defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection." *Id.* If Defendant can articulate such a reason, then Plaintiff can still establish discrimination by proving that the reason was a pretext for actual discrimination. *Id.* This may be done by showing that the stated reason (1) has no basis in fact; (2) was not Defendant's actual motivation; or (3) was insufficient to explain Defendant's actions. *Id.*

658

■ In assessing an employer's legitimate non-discriminatory reason, "the question is not whether the employer's reasons are right, but whether the employer's description of its reasons is honest." *Comiskey v. Auto. Indus. Action Group*, 40 F.Supp.2d 877, 896 (E.D.Mich.1999) (Rosen, J.) (Quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)). As the Sixth Circuit stated, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). The employer must provide evidence to support its employment action for this "honest belief" rule to apply. *Id.*

■ Defendant maintains that Plaintiff has not made out a *prima facie* case because he has not established the third and fourth elements, namely, that he was qualified for the position or that he was similarly situated with the person who was hired. Although Plaintiff met the minimum qualifications for the position, so did twenty-three other candidates who had made it on to the final eligibility list. Consequently, Defendant asserts that it was allowed to form additional qualifications and review the application materials for those additional qualifications. Barbara Hankey, who performed the interviews and the final hiring decision, and was promoted from the position herself, made it her goal to fill the position with someone who had criminal justice experience.

Whether or not creating additional requirements is an acceptable procedure, the Court concludes that while Plaintiff has established that he was initially qualified for the job, he has not established that he was similarly situated with Mr. Gatt, the person whom Defendant decided to hire. It is obvious that the position of Chief Community Corrections Field Operations

Manager entails working within the criminal justice system. A candidate with criminal justice experience is simply more qualified than a candidate with no such experience, and the two are not similarly situated.

Plaintiff's contention that Defendant could not know whether Mr. Gatt was more qualified than Plaintiff without interviewing Plaintiff lacks merit. The application procedures prior to the interview stage provided ample opportunity to discover the type of work experience possessed by each candidate. Plaintiff lacked any criminal justice experience and, given the position's job description, no reasonable jury could conclude that Plaintiff was similarly situated with Mr. Gatt when it came to selecting the most qualified candidate for the position of the *Chief* of Community Corrections Field Operations. Thus, Plaintiff has not made out a *prima facie* case of discrimination. Since Plaintiff has not presented any direct evidence of discrimination and has failed to carry the burden required of the alternative method of presenting circumstantial evidence, the Court will grant Defendant's motion for summary judgment.

■ Moreover, even if Plaintiff were able to make out a *prima facie* case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason, namely, Mr. Gatt's experience made him more qualified than Plaintiff. Plaintiff, though, claims that this reason is pretextual because three of the six persons interviewed for the position had no direct criminal justice experience. Yet these three candidates without experience were interviewed before Plaintiff became eligible and, noticeably, none of the three were hired. Instead, Defendant discovered Mr. Gatt with his extensive criminal justice experience and, consequently, found no need to interview Plaintiff once he became

eligible, or anyone else who lacked such experience. Defendant's decision to hire Mr. Gatt based on his extensive experience has a basis in fact. It was the motivation behind, and sufficiently explains, Defendant's decision. Deposition testimony clearly demonstrates that Defendant believed Mr. Gatt to be a better choice than Plaintiff, not because of his race, but because of his experience.

Plaintiff relies on *Kline v. Tennessee Valley Authority,* 128 F.3d 337 (6th Cir. 1997), for the proposition that Plaintiff's lack of an interview is a basis for a finding of pretext. In *Kline,* the Sixth Circuit found that the Tennessee Valley Authority's ("TVA") failure to offer Kline an interview supported an inference of pretext. *Id.* at 351. Similar to Plaintiff's case, Kline was initially passed over because he failed to make the list of candidates prepared for the position. *Id.* at 339.

Yet, unlike Plaintiff in this case, Kline received the benefit of a re-selection ordered by the TVA's Equal Opportunity Office, when that office determined that Kline was discriminated against on account of race when he was not considered for the position in question. *Id.* at 340. The TVA, though, re-selected Kline's competitor after finding that Kline was less qualified. Yet, the TVA did so without ever interviewing Kline. Thus, it was the TVA's failure to interview Kline *during the re-selection process,* when it was ordered to specifically reconsider Kline's qualifications, that supported a finding that the TVA's determination of Kline's qualifications was pretextual. *Id.* at 351. The TVA testified that Kline's competitor was given the job based mainly on her interview, which made up for her "lack in the process and experience." *Id.* According to the Sixth Circuit, then, for the TVA to not interview Kline because he similarly lacked experience supported a finding of pretext,

especially since "[i]t is questionable whether [Kline's competitor] was more qualified than Kline." *Id.*

Whereas here, Mr. Gatt did not lack experience such that he had to compensate for it with his interview. On the contrary, he was hired specifically because of his experience. Finally, given Mr. Gatt's experience, it is not "questionable" whether Mr. Gatt was more qualified than Plaintiff for the position of the Chief of Community Corrections Field Operations.

## IV. Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 18] is **GRANTED** and this case, no. 03–40143, is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, as the Court is no longer in need of further argument in this case, Defendant's "Emergency Motion to Allow Defendant Oral Argument" [docket entry 26] is **DENIED** as moot.

**SO ORDERED.**