Theodore C. TIMMIS, Plaintiff,

v.

SULZER INTERMEDICS, INC., a foreign corporation, Guidant Sales Corporation, a foreign corporation, and Guidant Corporation, a foreign corporation, Defendants.

No. 00–CV–75622–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 9, 2001.

David B. Timmis, Vandeveer, Garzia, P.C., Troy, MI, for plaintiff.

Susan Artinian, Jill M. Wheaton, Dykema Gossett, Detroit, MI, for defendants.

### OPINION

DUGGAN, District Judge.

On December 29, 2000, Plaintiff filed a three count complaint against Defendants alleging: breach of contract (Count I); tortious, intentional and/or grossly negligent, interference with a business relationship and/or prospective business advantage (Count II); and fraud and misrepresentation (Count III). The matter is currently before the Court on Defendants' motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The Court entertained oral argument on June 21, 2001. For the reasons that follow, Defendants' motion to dismiss shall be granted in part and denied in part.

## I. Background

The facts below are as alleged by Plaintiff. In April of 1998, Plaintiff became a "subrepresentative" for Cardiac Technologies, Inc. ("CTI"). (Compl.¶ 7). Prior to that time, Plaintiff had been an independent sales representative selling cardiac pulse generators for a number of years.

CTI was a party to a Sales Representative Agreement with Defendant Sulzer Intermedics, Inc. ("Sulzer"). (Compl.¶ 8). Pursuant to that agreement, Sulzer appointed CTI as its sales representative on a commission basis to sell the "Intermedics product line" of cardiac pulse generators. (*Id.*).

However, shortly after Plaintiff joined CTI, Sulzer announced that it was placing its Intermedics product line on the market for sale. Plaintiff states this announcement was contrary to representations that Sulzer made to Plaintiff prior to Plaintiff's decision to leave his prior sales position to join CTI. (Compl.¶ 9).

On or about September 21, 1998, it was announced that an agreement had been reached whereby Sulzer was to sell the Intermedics product line to Defendant Guidant Corporation and/or Defendant Guidant Sales Corporation (collectively referred to as "Guidant").

In a letter dated October 2, 1998, Guidant made Plaintiff a conditional offer of employment for the position of Sales Representative with Guidant. However, as the terms of the Guidant's conditional offer were less favorable to Plaintiff than his pre-existing contract with CTI and/or Sulzer, Plaintiff did not accept Guidant's offer. (Compl.¶¶ 13–14).

Guidant acquired the Intermedics product line following a closing on February 1, 1999. On that same date, CTI's Sales Representative Agreement with Sulzer terminated and CTI ceased to be a representative of Sulzer. (Compl.¶ 16).[1] Immediately after closing, Guidant announced its intention to close the Sulzer manufacturing facilities, resulting in the phase out and discontinuance of the Intermedics product line. Plaintiff claims this action was in direct contradiction of the representations that were made by Sulzer and/or Guidant during its/their "courtship" of Plaintiff. (Compl.¶ 17).

On February 4, 1999, Sulzer and/or Guidant verbally informed Plaintiff that they would no longer honor his contract with Sulzer. (Compl.¶ 18).

On December 29, 2000, Plaintiff filed suit against Defendants, alleging a breach of contract claim, a tortious interference claim, and a fraud claim.

### Standard of Review

Rule 12(b)(6) addresses the failure to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). The familiar standard for reviewing dismissals under Rule 12(b)(6) is that the factual allegations in the complaint must be regarded as true. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The claim should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## II. Discussion

In their motion to dismiss, Defendants contend that all three of Plaintiff's claims should be dismissed for failure to sufficiently allege the essential elements of each claim.

---

**1.** At the hearing on June 21, 2001, Plaintiff's counsel represented that this "termination" was pursuant to an agreement between Sulzer and CTI in September, 1998.

## A. Breach of Contract Claim

■ In Count I, Plaintiff asserts a breach of contract claim. Both parties agree that under Michigan law, the essential elements of a breach of contract claim are: 1) the existence of a contract between the parties, 2) the terms of the contract, 3) that defendant breached the contract, and 4) that the breach caused the plaintiff injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir.1999).

Defendants contend that Plaintiff's breach of contract claim must fail because the Plaintiff has failed to identify the contract that forms the basis of his breach of contract claim. At the hearing on June 21, 2001, Plaintiff represented that the "contracts" that existed and which are the subject of the breach of contract claim are the "Letter Agreement," attached to the complaint as exhibit 2, and the "TFA reimbursement agreement," attached as exhibit 1.

Defendants contend that these documents cannot form the basis of a viable breach of contract claim by Plaintiff against any of the Defendants in this case. Defendants note that the Letter Agreement is between CTI and Sulzer, and because Plaintiff is not a party to this agreement, it cannot provide a basis for Plaintiff's breach of contract claim against Defendants. In addition, Defendants note that the Letter Agreement specifically provides that Sulzer and CTI agreed that the agent (Plaintiff) is under contract with CTI, and not with Sulzer, and that the agent is not an employee of Sulzer. (Compl., Ex. 2 at 2).

Defendants also contend that Plaintiff cannot establish any breach of the "Letter Agreement" because that document provides that it will "terminate" upon the termination of CTI as a representative of Sulzer Intermedics products. Plaintiff acknowledges that CTI terminated as a representative of Sulzer Intermedics products on February 11, 1999, pursuant to the agreement between the two parties reached in September 1998.

Defendant further contends that the TFA reimbursement agreement cannot be the basis of a breach of contract claim against Defendants, as none of the Defendants are a party to this agreement. Furthermore, this agreement simply obligates Plaintiff to reimburse CTI for monies paid to him by CTI under certain terms and conditions. Therefore, Defendants cannot be liable for any breach of this agreement, if in fact there was any breach of this agreement.

The Court is satisfied that neither the Letter Agreement, nor the TFA reimbursement agreement, when considered alone or together, set forth any direct contractual obligations to Plaintiff on the part of Defendants.

■ In the event that the Court does not find a direct contractual agreement between Plaintiff and Defendants, Plaintiff's alternative position is that he brings his breach of contract claim as a "third party beneficiary" under the Letter Agreement. The rights of third party beneficiaries are governed by MICH.COMP.LAWS § 600.1405, which provides that a person "for whose benefit a promise is made by way of contract ... has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." "A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something *directly to or for said person.*" MICH.COMP.LAWS § 600.1405(1). (emphasis added.)

In the Letter Agreement at issue, Sulzer agreed to "provide temporary financial assistance (TFA) *to the company*[2] *to help it*

---

**2.** The Letter Agreement specifically noted that the term "company" referred to CTI.

add a new independent sales agent." (Compl., Ex. 2 at 1) (emphasis added). More specifically, the agreement provided that Sulzer would pay CTI $15,000 per month during an 18–month transition period, provided CTI maintained certain minimum levels of unit sales. It also provided that "[i]n order to assist the agent in establishing himself in the assigned territory," *CTI intended to provide the agent* with $15,000 per month in TFA.

The only promise contained in the Letter Agreement that could possibly be construed as an undertaking to "give or to do something directly for" Plaintiff is CTI's promise to pay $15,000 per month to Plaintiff so long as the agreement was in effect. Thus, the only promise that Plaintiff conceivably has standing to enforce a third-party beneficiary is a promise undertaken by CTI, who is not a party to this case. Therefore, the Court concludes that Plaintiff's claim of third party beneficiary status in relation to the Letter Agreement does not provide Plaintiff with a viable claim against Defendants.

Accordingly, Plaintiff's breach of contract claim must be dismissed.

### B. *Tortious Interference Claim*

■ In the event that his breach of contract claim fails, Plaintiff alternatively asserts a tortious interference claim. At the hearing, Plaintiff identified the contract which forms the basis of his tortious interference claim as the TFA Reimbursement Agreement, attached as Exhibit 1 to Plaintiff's complaint.[3]

The Court is satisfied that Plaintiff's tortious interference claim must fail. By its terms, the TFA reimbursement agreement obligated Plaintiff to reimburse CTI.

**3.** Initially it appeared from Plaintiff's pleadings that he was contending that the Letter Agreement (attached as Ex. 2 to Plaintiff's complaint) was the agreement which was the subject of the tortious interference claim.

There is nothing in Plaintiff's complaint that supports a claim that Defendants somehow tortiously interfered with this contract. Furthermore, as Plaintiff's counsel acknowledged at the hearing on June 21, 2001, this agreement was terminated because CTI chose to terminate its agreement with Sulzer.

In addition, this claim fails because Plaintiff has not sufficiently alleged the third element of a tortious interference claim. This third element "requires the plaintiff to demonstrate illegal or unethical conduct on the part of the defendant." *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 624 (6th Cir.1999) (citing *Hutton v. Roberts*, 182 Mich.App. 153, 159, 451 N.W.2d 536 (1989)).

Accordingly, for the reasons above, Plaintiff's tortious interference claim shall be dismissed.

### C. *Fraud & Misrepresentation Claim*

■ Defendants contend that this claim should be dismissed because it fails to allege with sufficient particularity, a claim for fraud and misrepresentation. "The elements constituting actionable fraud or misrepresentation are well settled," and include: 1) a material misrepresentation by defendant, 2) that was false, 3) that defendant knew to be false when made, 4) that defendant made with the intention that it should be acted upon by plaintiff, 5) that plaintiff acted in reliance upon it, and 6) that plaintiff thereby suffered injury. *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976).

However, it is clear that a party cannot tortiously interfere with its own contract. *Dzierwa v. Mich. Oil Co.*, 152 Mich.App. 281, 287, 393 N.W.2d 610 (1986).

The Court agrees that Plaintiff's original complaint failed to set forth with sufficient particularity the elements of a fraud and misrepresentation claim. However, at the hearing on June 21, 2001, the Court permitted Plaintiff to amend his complaint to set forth with particularity, his claim of fraud and misrepresentation. On June 28, 2001, Plaintiff filed an amended complaint. This Court is satisfied that the amended complaint contains sufficient allegations to survive a motion to dismiss brought pursuant to FED.R.CIV.P. 12(b)(6). The Court therefore denies Defendants' motion to dismiss with respect to the fraud and misrepresentation claim.

### III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's breach of contract and tortious interference claims shall be granted, and Defendants' motion to dismiss Plaintiff's fraud and misrepresentation claim shall be denied.

An Order consistent with this Opinion shall issue forthwith.