**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0319n.06

Case No. 15-2564

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ORDOS CITY HAWTAI AUTOBODY COMPANY, LTD.; INNER MONGOLIA OED ENGINE COMPANY, LTD., | ) ) ) ) | **FILED**<br>Jun 08, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF MICHIGAN |
| DIMOND RIGGING COMPANY, LLC, dba Absolute Rigging And Millwrights, | ) ) ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. A car manufacturer's subsidiaries sued a rigging company, claiming that the company breached several contracts requiring it to dismantle, package, and arrange overseas transportation for two sets of industrial machines. The district court granted summary judgment in the subsidiaries' favor, and a jury awarded $1,214,000 in damages. The rigging company appeals. We AFFIRM.

**I. Background**

Plaintiffs Ordos City Hawtai Autobody ("Ordos") and Inner Mongolia OED Engine Company, Ltd. ("Inner Mongolia") (collectively, "Plaintiffs"), are wholly owned subsidiaries of the Chinese car-manufacturing company Hawtai Motor Group ("Hawtai"). Defendant Dimond

Rigging Company, LLC, d/b/a Absolute Rigging And Millwrights ("ARM" or "Defendant"), specializes in "dismantling, rigging, packing, loading and unloading" heavy machinery in preparation for transportation.

In early 2011, Plaintiffs acquired two sets of automotive-manufacturing equipment from a Chrysler plant in Twinsburg, Ohio. Ordos bought the first set, consisting of a Verson Press and a Schuler Cut-to-Length Press (collectively, "Line-7 Equipment"), and Inner Mongolia purchased the second, a Schuler Crossbar-Line Press ("Line-15 Equipment"). Through a series of contracts, Ordos and Inner Mongolia hired ARM to "clean, pack, rig, and transport the equipment for shipping to China."

(1) The Original Contracts

Ordos and ARM negotiated five contracts for the Line-7 Equipment: four for washing, packing, and rigging the equipment in preparation for loading onto cargo ships ("Line-7 Rigging Agreements"), and one for arranging shipping from Cleveland, Ohio, to Tianjin, China ("Line-7 Transportation Agreement"). Ordos agreed to pay $2,320,000 in exchange for ARM's services.

In parallel fashion, Inner Mongolia executed two contracts: one for ARM to "rig, dismantle, wash and pack [the Line-15 Equipment]" ("Line-15 Rigging Agreement, and another for ARM to arrange the Line-15 Equipment's transportation ("Line-15 Transportation Agreement"). In return, Ordos agreed to pay $1,810,000.

(2) Performance of the Original Contracts

ARM washed, packed, and rigged the Line-7 Equipment by November 2011, and Hawtai paid the full amount due on all Line-7 contracts. But problems arose when the cargo ship's crew, following an argument with the dockworkers, abandoned thirty-four pieces of the Line-7 Equipment in the Port of Cleveland. Even worse, rough seas forced the ship captain to dump a

large elevator from the Line-7 Equipment into the ocean. Although ARM received a $975,000 insurance check to rebuild the elevator, it never replaced the elevator or forwarded the insurance proceeds to the Plaintiffs.

Complications also frustrated work on the Line-15 Equipment, and ARM missed the target dates for both rigging and shipping. Despite ARM's failure to fulfill its end of the bargain, Hawtai paid the Line-15 Rigging Agreement in full and made partial payment on the Line-15 Transportation Agreement.

(3) Amended Transportation Agreement

By March 2013—15 months after the ill-fated shipment of the Line-7 Equipment and 14 months after the target shipping date for the Line-15 Equipment—ARM had not transported the remaining Line-7 Equipment or any of the Line-15 Equipment. Additionally, ARM had made no progress on reconstructing the elevator.

To remedy these problems, the parties signed an Amended Transportation Agreement, with Plaintiffs agreeing to pay ARM $700,000 to arrange transportation for the remaining Line-7 Equipment by March 2013 and the Line-15 Equipment by April 2013. The amended contract also recognized that "[ARM] ha[d] obtained approval from the insurance company to begin obtaining or constructing the Line 7 equipment, specifically the elevator."

(4) Performance of the Amended Transportation Agreement

Ordos paid $500,000 pursuant to the new contract's payment schedule, but ARM shipped the remaining Line-7 Equipment late (April or May of 2013), shipped only some of the Line-15 Equipment, and left the remaining Line-15 parts in warehouses and on an open lot until November 2013, when Plaintiffs sued to regain possession of their machines. By the time

Plaintiffs received a court order, retrieved the equipment, and arranged their own transportation, more than a year had passed since the contract deadline.

(5) Procedural History

After notifying ARM that they "consider[ed] the Agreements terminated immediately based on ARM's breaches and repudiation," Plaintiffs sued in November 2013, alleging six causes of action: (1) claim and delivery; (2) conversion; (3) declaratory relief; (4) breach of contracts; (5) negligence; and (6) unjust enrichment. In addition to raising multiple defenses in its answer, ARM listed nine counterclaims: (1) breach of written and oral agreements; (2) promissory estoppel; (3) conversion; (4) intentional interference with a business relationship; (5) fraudulent inducement; (6) negligence; (7) declaratory relief; (8) artisan's lien and lien foreclosure; and (9) indemnity and/or contribution.

On May 11, 2015, Plaintiffs moved for summary judgment on their breach-of-contracts claims and all of ARM's counterclaims. Under Eastern District of Michigan Local Civil Rule 7.1(e)(1)(B) and Federal Rule of Civil Procedure 6(d), ARM had until June 4, 2015 to respond.[1] ARM missed that deadline. After waiting five more days, the district court ordered ARM to show cause by June 16 as to why the court should not grant Plaintiffs' summary-judgment motion.

When ARM's counsel responded to the show-cause order on June 16, he explained that he had been on vacation all of May, checked his email only a few times per week during vacation, and accidentally deleted the email notifying him about the summary-judgment filing. Although "unmoved" by the excuses, the district court allowed ARM five additional days to

---

[1] In its show-cause order, the district court incorrectly determined the filing deadline to be June 1 without accounting for Federal Rule of Civil Procedure 6(d). Regardless, ARM missed the correct deadline by five days.

submit a summary-judgment response. The court warned ARM that if it filed later than June 22 or failed to "comply with the Local Rules or with th[e] Court's Practice Guidelines, . . . the Response [would] not be accepted."

ARM complied with neither directives. It filed its response on June 23—one day after the extended deadline—and its brief violated Rule 5(e) of the Electronic Filing Policies and Procedures for the Eastern District of Michigan ("EFP") ("[A] response or reply to a motion must not be combined with a counter-motion.") and Local Rule 5.1(a)(3), which requires parties to use 14-point font.

ARM's brief also disregarded the district court's practice guidelines, which required (i) a "Counter-Statement of Disputed Facts" that admits or denies each fact in the Plaintiffs' "Statement of Material Facts Not in Dispute" and (ii) citations to the page numbers or sections for any record document upon which ARM relied. Specifically, ARM mislabeled its counter-statement, answered less than half the Plaintiffs' facts, and cited few, if any, sections or pages numbers. The district court therefore struck ARM's response to summary judgment and later denied ARM's motion for reconsideration of the strike order.

The district court then granted Plaintiffs' motion for partial summary judgment and dismissed all of ARM's counterclaims. The case proceeded to a jury trial to determine damages for breaches of the Line-15 and Amended Transportation Agreements, as well as the lost elevator. The jury found damages of $239,000 for ARM's breach of the Line-15 Transportation Agreement and $975,000 in damages for the loss of the elevator. ARM timely appeals.

## II.  The District Court's Strike Order

We review a district court's decision to strike a party's motion for abuse of discretion. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003) (citation omitted).  "[D]ecisions that are reasonable, that is, not arbitrary, will not be overturned." *Id.* (citation omitted).

On appeal, ARM rehashes the litany of excuses for non-compliance presented in its motion for reconsideration of the strike order: (1) given that EFP Rule 5(e) is ambiguous and conflicts with both Local Rule 7.1(c)(3) and Federal Rule 56(f), the district court need not apply Rule 5(e); (2) because ARM attempted in "good faith" to comply with the local formatting rules, it did not "willfully" violate them; (3) the district court's failure to notify counsel of font-size violations in previous filings should afford ARM the chance to correct its error; and (4) the district court should employ the least-restrictive punishment.  None of these excuses convinces us that the district court abused its discretion in striking the summary-judgment response and denying reconsideration.

(1) Interpreting EFP Rule 5(e), Local Rule 7.1, and Federal Rule of Civil Procedure 56(f)

EFP Rule 5(e) provides that "[a] complaint must not be combined with a motion for preliminary relief and a response or reply to a motion must not be combined with a counter-motion.  Papers filed in violation of this rule will be struck."  ARM attempts to read ambiguity into the rule by questioning whether "a motion" refers to "'any motion' or a motion for 'preliminary relief' filed in connection with a complaint."  But as the district court pointed out, a straightforward reading prohibits a party from "fil[ing] a motion response and a counter-motion together in one document."  ARM's convoluted interpretation of EFP Rule 5(e) contradicts the rule's plain language.

As for the purported conflict between EFP Rule 5(e) and Local Rule 7.1, ARM again misconstrues the plain text. *See* E.D. Mich. L.R. 7.1(c)(3) ("[A] challenge to several arguments raised in a motion for summary judgment generally must be in a single response."). Although Local Rule 7.1(c)(3) requires a party to include all "challenges" to a moving party's motion within a single responsive motion, ARM conflates "countermotion" with "challenge." *Id.* But since a "challenge" does not include countermotions, Rule 7.1(c)(3) does not require a party to file a countermotion in combination with a response brief, and EFP Rule 5(e) and Local Rule 7.1 are therefore consistent with each other.

Finally, ARM argues that Federal Rule of Civil Procedure 56(f) allows ARM to "request[] judgment in its favor without filing a counter-motion," and should therefore "trump" EFP Rule 5(e). *See* Fed. R. Civ. P. 56(f). Once again, ARM misinterprets the rule. Rule 56(f) empowers a court to grant summary judgment for a nonmoving party; it does not permit a party to move for summary judgment in a responsive pleading. *Compare id.* ("[A] *court may . . . grant* summary judgment for a nonmovant." (emphasis added)) *with* Rule 56(a) ("A *party may move* for summary judgment . . . ." (emphasis added)). And although ARM characterizes its citations to Rule 56(f) as merely "direct[ing] the trial court's attention to [Rule 56(f)]," its repeated requests for "the dismissal of [Plaintiffs'] complaint in its entirety" and "judgment [to be] entered in favor of [ARM]" clearly show ARM seeking affirmative relief (i.e., making a countermotion) within its response brief.

In short, because ARM fails to demonstrate any conflict between EFP 5(e) and another rule, and because EFP 5(e) explicitly allows courts to strike "[p]apers filed in violation of this rule," the district court did not abuse its discretion.

(2) <u>ARM's good-faith effort to comply with the rules</u>

ARM describes its failure to comply with the font-size requirement as unintentional and "non-willful." Relying on Federal Rule of Civil Procedure 83—which prohibits a court from enforcing a rule of form "in a way that causes a party to lose any right because of a nonwillful failure to comply"—ARM argues that the district court erred by striking its response based on the incorrect font size, especially given the two-and-a-half business days it had to submit its response. Its arguments lack merit.

ARM's violation of the font-size requirement may seem trivial, but not when considered in the context of ARM's other violations—several of which go beyond mere formatting errors. The district court explained when vacating the show-cause order that it would only accept the tardy response brief—which by then was nearly two weeks late—if ARM complied with all the local rules and practice guidelines. In blatant disregard of the district court's accommodation effort, ARM proceeded to violate multiple local rules and practice guidelines.

We also agree with the district court that the two-and-one-half-day time constraint was of ARM's own making. Even accepting ARM's explanation that it accidentally deleted the initial notification, two other emails would have apprised ARM of Plaintiffs' summary-judgment motion: a notice that Plaintiffs had filed a "Statement of Material Facts Not In Dispute" and a notice of the hearing on the motion for summary judgment. At a minimum, the hearing notice—emailed eighteen days after the filing of summary judgment—gave sufficient notice for ARM to request extra time. Instead, as the district court observed, ARM "waited an additional *eleven days* for [the court] to issue a Show Cause Order."

Last, ARM misconstrues the time available for completing its tardy brief. Counting the weekends—which ARM excludes from its tally—ARM had thirteen days from the time the

district court issued the show-cause order. Even counting just the days after the court vacated its show-cause order, ARM had five full days to submit its response.

(3) The district court's failure to notify ARM of errors in its response brief

Under Local Rule 11.1, the district court must notify ARM of any filing errors and provide a reasonable opportunity to amend the brief. *See* E.D. Mich. L.R. 11.1. ARM contends that the district court neither notified ARM of the font-size or the inclusion-of-a-countermotion errors, nor provided ARM a chance to correct its blunders.

Although the district court did not warn of the specific violations that ARM cites, the district court's show-cause order notified ARM of its failure to submit a timely response brief (a violation of Local Rule 7.1) and gave ARM an opportunity to rectify its tardiness. Furthermore, the show-cause order warned ARM that the court would reject any response brief that failed to meet the extended deadline or conform to the rules and practice guidelines. Given the court's admonitions and the deadline extension, ARM had ample notice and opportunity to comply with the rules and the show-cause order.

ARM makes one final point regarding notification: many of its previous filings used either 11- or 12-point font (rather than the mandated 14-point font), yet the court did not employ the recommended EFP procedure for informing parties of such errors. EFP Appendix, Ex. A ("With each e-filing error or instance of noncompliance[,] a Notice of E-Filing Error or Notice of Non-Compliance will be generated and served on the filing user."). The court's (or the EFP administrator's) failure to generate an e-notice for prior violations, however, does not relieve ARM of its independent responsibility to adhere to the rules.

(4) <u>Imposing the "least-restrictive" sanction</u>

ARM argues that because the strike order was the first time the court notified ARM of its failure to use the right font size, the district court should have imposed a less "restrictive" penalty. *See* E.D. Mich. L.R. 11.1. But in light of the repeated warnings and the bevy of rule violations, it was reasonable for the court to strike the response brief.

In short, because ARM fails to identify how the district court's decision to strike ARM's brief was arbitrary or unreasonable, the district court did not abuse its discretion.

### III. Summary Judgment Order

This court reviews the district court's grant of summary judgment de novo. *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 842 F.3d 422, 426 (6th Cir. 2016) (citation omitted). "Summary judgment is appropriate when, construing the facts and drawing all reasonable inferences in favor of the nonmoving party, there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law." *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 559–60 (6th Cir. 2016) (citing *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016); Fed. R. Civ. P. 56(a)). Where a summary judgment motion goes unopposed, this court may rely "on the facts advanced by the movant," *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404–405, 407 (6th Cir. 1992), but must still "review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists," *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).

Because this is a diversity action based on state law claims, this court applies the substantive law of the forum state's highest court. *Equitable Life Assurance Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

(1) Affirmative Defense of Illegality

ARM argues that Hawtai's agents received illegal "kickbacks" in exchange for approving the contracts, thereby voiding several contracts *ab initio*. *See Michelson v. Voison*, 658 N.W.2d 188, 190 (Mich. Ct. App. 2003) ("Contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void." (citing *Maids Int'l, Inc. v. Saunders, Inc.*, 569 N.W.2d 857 (Mich. Ct. App. 1997)). But ARM may not raise this illegality defense on appeal because it failed to raise it below and, in any event, the record lacks evidence supporting ARM's theory.

Under the federal rules, an illegality defense constitutes an affirmative defense, Fed. R. Civ. P. 8(c), and "[a]s a general rule, failure to plead an affirmative defense results in [forfeiture] of that defense." *Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546, 550 (6th Cir. 2005). But we may excuse a failure to comply with this rule where the plaintiff "receives [both] notice of an affirmative defense by some means other than pleadings" and a reasonable opportunity to respond. *Huss v. King Co.*, 338 F.3d 647, 651–52 (6th Cir. 2003); *see Rogers v. I.R.S.*, 822 F.3d 854, 856–57 (6th Cir. 2016) (affirming the district court's decision to consider defendant's affirmative defenses for the first time at summary judgment where plaintiff suffered no prejudice or surprise). Furthermore, the Michigan Supreme Court has held that if illegality is apparent from either the face of the contract or the evidence, a party may raise the defense for the first time at any point during litigation, even on appeal. *Meek v. Wilson*, 278 N.W. 731, 736 (Mich. 1938) (noting also a line of cases that hold the opposite).

ARM failed to plead illegality as an affirmative defense. Although ARM's answer to Plaintiffs' complaint describes $130,000 in "Personnel Expenses [that] ha[ve] not yet been reimbursed," it neither characterizes those payments as kickbacks nor raises an illegality defense. Likewise, ARM's amended counterclaims mention "kickbacks" multiple times under a

promissory-estoppel claim, but fail to allege that Plaintiffs awarded the contracts contingent on the kickbacks. Moreover, ARM's list of defenses in its pleading makes no mention of illegality.

ARM also fell short of raising the defense in any way that would give Plaintiffs fair notice. ARM attempted to raise illegality in its tardy summary-judgment response, but as explained above, the district court struck the entire submission from the record. ARM tried once more to bring up the illegality defense by filing a "second" summary-judgment motion, styled as a "Motion in Limine," but the court rejected this maneuver.

Finally, because none of the contracts describe acts against public policy or law, and ARM has failed to identify evidence in the record demonstrating illegality, this court has no occasion for finding the contracts illegal. *See Meek*, 278 N.W. at 736.

(2) <u>Breach of Contracts</u>

To recover on a breach-of-contract claim under Michigan law, a party must show: "1) the existence of a contract between the parties, 2) the terms of the contract, 3) that defendant breached the contract, and 4) that the breach caused the plaintiff injury."[2] *Timmis v. Sulzer Intermedics, Inc.*, 157 F. Supp. 2d 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

A) Line-7 Elevator

      i. *Terms of the Contracts*

When interpreting a contract, "Michigan courts 'examine contractual language and give the words their plain and ordinary meanings.'" *Certified Restoration Dry Cleaning Network, LLC, v. Tenke Corp.*, 511 F.3d 535, 544 (6th Cir. 2007) (alterations omitted) (quoting *Coates v.*

---

[2] Because ARM does not challenge the existence of the contract, and the district court left the damages amount for trial, we analyze only the terms of the contract and whether a breach occurred.

*Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)). "If the language of the contract is unambiguous, the court construes and enforces the contract as written." *Id.* (alterations omitted) (quoting *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003)).

Plaintiffs allege that ARM breached the Line-7 Transportation Agreement and the Amended Transportation Agreement when it failed to replace the lost elevator. They point to three provisions to establish ARM's contractual responsibility:

- Section 1.8 of the Line-7 Transportation Agreement: "[ARM] shall purchase insurance . . . for both land and sea transportation in order to insure against damages and losses of the equipment being shipped."

- Section 3.1 of the Line-7 Transportation Agreement, entitled "Risk of Loss": "risk of loss to goods during transit between the Port of Cleveland, Ohio and the Xingang Port in China shall be borne by [ARM] under a separately underwritten insurance policy."

- Section 3(i) of the Amended Transportation Agreement: "the Parties agree to perform the following services and obligations: . . . ARM acknowledges that it has obtained approval from the insurance company to begin obtaining or constructing the Line 7 equipment, specifically the elevator, lost at sea January 2012."

We agree that those provisions oblige ARM to replace the elevator. The plain and unambiguous language of the Line-7 Transportation Agreement places the risk of loss for damaged property upon ARM. Furthermore, ARM affirmed its obligation to make good on replacing the elevator in the Amended Transportation Agreement.

ARM attempts to contest this language by smuggling in arguments from its stricken summary-judgment response. Because the district court properly struck the response, we disregard these arguments as forfeited. *See E.M.A. Nationwide*, 767 F.3d at 630 ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006))).

### ii. Breach of Contract

Plaintiffs' evidence supports their claim that ARM failed to perform under the Line-7 Transportation Agreement and the Amended Transportation Agreement. *See* 23 Williston on Contracts § 63:1 ("[A] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract."). Both parties agree that the elevator fell overboard. Moreover, Plaintiffs provided ARM's insurance claim for the lost elevator, documents stating that ARM won the bid to construct a new elevator, and a $975,000 insurance payment to ARM in accordance with the bid. Plaintiffs' witness also testified that ARM neither built the elevator nor forwarded the insurance proceeds. . ARM has therefore breached the Line-7 Agreements.

### B) Line-15 Equipment

Although ARM requests review of the district court's entire summary-judgment order, its appellate brief supplies no analysis of the claims or counterclaims tied to the Line-15 Transportation Agreement. Accordingly, ARM waives these arguments. *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner . . . are deemed waived." (citation and internal quotation marks omitted)).

In sum, the district court did not err in granting summary judgment for the Plaintiffs' on the Line-7 and Line-15 breach-of-contract claims.

### (3) Promissory-Estoppel Claim for the Millwright Work

ARM asserts a promissory-estoppel claim, arguing that Plaintiffs agreed to pay ARM for "additional millwright services." To prove a promissory-estoppel claim, ARM must show

> (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) and the promise must be enforced to avoid injustice.

*Crown Tech. Park v. D&N Bank, F.S.B.*, 619 N.W.2d 66, 71 (Mich. Ct. App. 2000) (citation omitted). Because the district court struck ARM's summary-judgment response, ARM lacks sufficient evidence to prove promissory estoppel.

## IV. Challenges to Excluding Damages-Limitation Evidence

ARM contends that the district court erred when it excluded trial testimony on two contract clauses that might have limited ARM's liability—namely the *force majeure* clause and the insurance clause (§ 1.8) of the Line-15 Transportation Agreement. Plaintiffs counter that, because the clauses constituted affirmative defenses, ARM forfeited the ability to raise them at trial when it omitted them from the final pretrial order. We agree with the Plaintiffs.

"Because 'district courts have broad discretion to modify or enforce pretrial orders, . . . we review such rulings for an abuse of discretion.'" *Jones v. Potter*, 488 F.3d 397, 411 (6th Cir. 2007) (omission in original) (citation omitted). Under the Eastern District of Michigan Local Rule 16.2, a joint final pretrial order "*supersed*[*es*] the pleadings and *govern*[*s*] the course of the trial unless modified by further order." *Id.* (emphasis added). Additionally, courts hold that parties generally forfeit claims or defenses not raised in the final pretrial order. *Cf. Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442–43 (6th Cir. 2000) ("This Circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory."); *see also Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . .").

ARM omitted discussion of the insurance clause in its answer and in the final pretrial order. And although ARM listed *force majeure* as an affirmative defense in its answer, it failed

to mention *force majeure* in the final pretrial order. The district court therefore properly excluded evidence of both during the trial.

In a last ditch effort, ARM attempts to recast the issue as one of notice: Plaintiffs knew the contents of the contract from the beginning of the litigation and therefore should not have been surprised when ARM attempted to introduce the contract's terms at trial. But ARM's argument fails because the contract, standing alone, gives no notice of what legal theories ARM will pursue at trial, and neither party developed these defenses at any time.

## V. Challenges to the Verdict

1. Sufficiency of the Evidence

ARM challenges the sufficiency of the evidence, arguing that no "competent expert witness' testimony" supported the jury's finding of $239,000 in damages. But because ARM did not present the issue sufficiently in the district court, it forfeits its argument on appeal.

In its motion for directed verdict below, ARM contended that "Plaintiffs . . . introduced not one iota of evidence from any witness that Defendant breached . . . the Line 15 Rigging Agreement," but elaborated no further. Only on appeal does ARM explain its objection: Plaintiffs' key expert witness opined on subjects for which he lacked a basis of knowledge, and the district court therefore should have excluded the only testimony supporting the jury's verdict. Because ARM failed to describe its objection sufficiently in the lower court, it forfeits its challenge on appeal. *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 583 (6th Cir. 2015) ("Even where a party has made some reference to an issue in a [motion for directed verdict] . . . the issue is not preserved if it was not raised in a sufficiently substantial way . . . ." (citing *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 425–27 (6th Cir. 1993))).

2. Inconsistent Jury Verdict

ARM argues that the jury's special verdict "must be set aside [as] inconsistent." Plaintiffs counter that ARM forfeited this objection by failing to raise it below. They also argue that the court can read the verdict in a way that eliminates the inconsistency. Assuming without deciding that ARM can raise this objection for the first time on appeal,[3] we uphold the jury's verdict because we find no inconsistency under Michigan law.

At trial, Plaintiffs requested $515,000 in damages for ARM's breach of the Line-15 Transportation Agreement, and $239,000 for breach of two sections in the Line-15 Rigging Agreement. The jury found ARM's breaches of the Line-15 *Transportation* Agreement caused damages, but awarded $239,000 instead of the requested $515,000. It also found no breach of two sections of the Line-15 Rigging Agreement. ARM objects to the verdict, arguing that the jury could not have found "no breach" of the Rigging Agreement while awarding an amount that matches the damages request for breaching the Rigging Agreement.

In a diversity case, "[state] law determines what constitutes an inconsistent verdict." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 509 (6th Cir. 1998) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1148 n.4 (6th Cir. 1996)). Under Michigan law, "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent." *Granger v. Fruehauf Corp.*, 412 N.W.2d 199, 202 (Mich. 1987).

---

[3] The circuits are split on whether a party that fails to challenge a special verdict in the district court can raise the issue on appeal. *See Bonin v. Tour West, Inc.*, 896 F.2d 1260, 1262 (10th Cir. 1990) (listing Third, Fourth, Fifth, and Ninth Circuit precedent that distinguish between objections made for special and general verdicts); *Mason v. Ford Motor Co., Inc.*, 307 F.3d 1271, 1273–74 n.4 (11th Cir. 2002) (noting the conflicting case law within the Eleventh Circuit). The Sixth Circuit has not addressed this question.

Plaintiffs offer a logically coherent explanation: the jury found that ARM's breach of the Line-15 Transportation Agreement caused damages, but then determined that the damages were not as high as Plaintiffs claimed.

ARM argues that inconsistency between the jury's answers to the special questions most reasonably explains the verdict. But Michigan's standard hinges on demonstrating a logical explanation, not the most plausible one. *Id.* at 203 ("[E]very attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside." (citations omitted)). Plaintiffs' explanation suffices to meet this standard.

## VI. Conclusion

For these reasons, we AFFIRM.